572 A.2d 700

**Richard E. LOWRY, Appellant,**

**v.**

**STATE FARM INSURANCE COMPANIES, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1989.

Filed Feb. 23, 1990.

Reargument Denied April 30, 1990.

78

Raymond S. Woodard, Franklin, for appellant.

Gordon R. Miller, Meadville, for appellee.

Before McEWEN, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This appeal arises from an Order of the trial court which granted a motion for judgment *non obstante veredicto* in favor of the Defendant–Appellee, State Farm Insurance Companies (hereinafter "State Farm"). Further, the trial court's Order denied a motion for a new trial which was submitted by Plaintiff–Appellant Richard E. Lowry. After careful review, we have concluded that the trial court's grant of judgment n.o.v. must be reversed, and the verdict of the jury reinstated.

The procedural background of this case shows that the Plaintiff instituted this action seeking two types of recoveries from the Defendant, based upon Defendant's insurance coverage of a vehicle owned by the Plaintiff. In the first Count of his Amended Complaint, Mr. Lowry sought to recover under the so-called comprehensive coverage of the policy, for damages to the vehicle which occurred during an incident which will be more fully described later in this Opinion. Count Two of the Amended Complaint sought a recovery of triple damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Act of December 17, 1968, P.L. 1224 No. 387, § 1 *et seq.*, as amended, 73 P.S. 201-1 *et seq.*) The case was tried before a jury, which rendered a verdict in favor of the Plaintiff for $21,-100.00, the stipulated amount of damages which had occurred to the vehicle. Prior to the submission of the case to the jury, the trial judge had granted a defense motion for compulsory nonsuit as to Count Two of the Amended Complaint. After the verdict, the court granted the State Farm motion for judgment n.o.v. The Plaintiff's request for new trial was submitted in connection with the trial court's rejection of the triple damages claim set forth in Count Two of the Complaint. As noted above, the trial court rejected the motion for a new trial.

■ In the review of the record in an appeal from an order of a trial court which has granted judgment n.o.v., we are required to consider the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Northwest Savings Association v. Distler,* 354 Pa.Super. 187, 511 A.2d 824 (1986). We shall apply that principle in the analysis of this case.

The record shows that the Plaintiff was semi-retired and spent the winter months in Florida. He owned several vehicles which he used in Pennsylvania only during the warmer weather months of the year. Among these seasonal vehicles was a 1985 Chevrolet Corvette.

In the winter of 1986–1987, the Plaintiff had the Corvette parked at the residence of his son, Richard E. Lowry, Jr. The license plate was removed from the vehicle while it was stored there. On March 29, 1987, Richard E. Lowry, Jr. was away from home on a business trip and had an acquaintance, Steven M. Bell, staying at his residence as a "house sitter".

Without authorization to do so, Bell took a license plate from a truck that was parked on the property, and put it on the Corvette. He also located the keys for the Corvette, and took the Corvette for a drive. He wrecked the vehicle, causing the stipulated damages of $21,100.00. It was agreed that while Bell had no permission to drive the vehicle, he took it with an intent to return it to the Lowry residence.

At the time of the loss, the vehicle was not covered by so-called "collision" coverage, but only by comprehensive coverage. The latter provided protection for a loss resulting from a "theft" of the vehicle, but did not cover loss from the "unauthorized use" of the automobile. It was on this basis that State Farm eventually refused to pay the claim of Lowry, leading to the filing of this action. State Farm maintained that the conduct of Bell amounted to an "unauthorized use" of the Corvette, and not a "theft".

The Plaintiff testified regarding the circumstances which resulted in his lack of collision coverage on the Corvette at the time of the loss. He related that he had relied completely upon the advice of State Farm's selling agent in providing for his coverages. Because of his habit of storing the Corvette and other vehicles in Pennsylvania while he lived in Florida each winter, and the fact that neither he nor any other person was expected to or authorized to drive them on the roads during this time, it was arranged by the State Farm agent that the collision coverage on such vehicles would be cancelled during the winter, and automatically reinstated on April 1 of each year. Although he never read his policy, the Plaintiff recalled that the insurance agent had assured him that the comprehensive coverage that remained in effect during these winter months would provide protection against losses arising from theft, larceny, malicious mischief and vandalism. The winter cancellation of the collision protection policy provisions was designed to save Mr. Lowry some premium charges when the stored vehicles, including the Corvette, were not expected to be used.

At the conclusion of the Plaintiff's case, the Defendant sought a compulsory non-suit on both Counts of the Amended Complaint. In denying the motion for non-suit as to Count One, the trial judge remarked that the comprehensive provisions of the policy regarding "theft" were ambiguous, and that he thought that a layperson purchasing comprehensive insurance would believe he had coverage for the loss which resulted in the circumstances of this case. After initially denying the defense motion as to Count Two, the court subsequently granted non-suit as to the Plaintiff's claim for triple damages under the Unfair Trade Practices and Consumer Protection Law.

The trial court, in its charge, provided the jurors with a dictionary definition of theft, discussed the Crimes Code definition of theft, and informed the jury that the taking of the vehicle by Steven Bell without permission was an unlawful taking, without regard to whether or not he intended

to return it. After the jury rendered its verdict for the Plaintiff in the stipulated amount of the damage to the vehicle, both parties filed their post-trial motions.

In his Opinion, the trial judge explained his rationale for granting judgment n.o.v. for State Farm. He noted that the insurance policy provided coverage for theft, larceny, malicious mischief and vandalism under its comprehensive coverages. He said that the basic issue in the case was the meaning of "theft". Further, he stated that almost any insured would believe that Steven Bell was a "thief" the moment he removed the vehicle from the premises, and that the insured would conclude he had coverage under the comprehensive policy provision covering theft, whether or not the taking of the auto was intended to be temporary or permanent. However, the trial court concluded that under Pennsylvania law, a common-law definition of theft had to be applied in the construction of an insurance policy theft provision in cases such as the instant one. Thus, the court ruled that in our Commonwealth, the insured must prove that the taker had the criminal intent to permanently deprive the owner of his property in order to recover under a policy providing for theft coverage. In that regard, the trial court relied upon *Penn–Air, Inc. v. Indemnity Insurance Co. of North America,* 439 Pa. 511, 269 A.2d 19 (1970); *Hilliard Lumber Company v. Harleysville Mutual,* 175 Pa.Super. 94, 103 A.2d 436 (1954); *Gillespie v. Export Insurance Company,* 114 Pa.Super. 398, 174 A. 602 (1934); and *Seither v. Pennsylvania Manufacturers Association,* 104 Pa.Super. 260, 159 A. 53 (1932).

While it is not difficult to see why the trial court felt itself bound by these precedents, we do not find that these decisions provide current support for the trial court's rejection of the jury's verdict in favor of the Plaintiff. All of those old cases relied upon the then-current criminal common-law definition of theft in the civil analysis of insurance policy references to that term. Under such an analysis, the theft coverage of a policy was found to be applicable only in

the circumstances where the taker intended to permanently deprive the insured of the covered vehicle or other asset.

Such an approach is illogical under the current law of our Commonwealth, in which the common-law definition of "theft" is no longer applied, even in our criminal courts. The codification of "theft" and related offenses in our 1972 Crimes Code changed the common-law definitions of the same terms. See the Act of December 6, 1972, P.L. 1482, No. 334, § 1 *et seq.*, 18 Pa.C.S.A. § 101 *et seq.*, effective June 6, 1973. The Crimes Code includes separate definitions of theft offenses, including theft by unlawful taking or disposition [18 Pa.C.S.A. § 3921(a)], and unauthorized use of automobiles and other vehicles [18 Pa.C.S.A. § 3928(a)]. In 18 Pa.C.S.A. § 3902, the Code provides: "Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter...." The Supreme Court has held that § 3902 was specifically made a part of the Crimes Code section dealing with theft and related offenses to avoid the types of technicalities which previously distinguished different varieties of that general category of offense. See *Commonwealth v. Rosenzweig,* 514 Pa. 111, 121, 522 A.2d 1088, 1094 (1987). Thus, if the trial court felt compelled to apply a criminal law analysis to the resolution of what the terms of the insurance policy meant in this case, it should have applied the criminal law which was effective when the subject insurance contract was entered into, rather than common-law definitions which have not been a part of the law in our Commonwealth for almost twenty years.

The jurors were supplied with an adequate instruction as to the meaning of the term "theft", and applied their reasoning and broad discretion to conclude that the insurance policy comprehensive theft provision afforded coverage to the Plaintiff in the circumstances presented in this case. The verdict could only be overturned by applying an outdated common-law definition of theft, in reliance upon precedents which pre-dated the enactment of the Crimes

Code in our Commonwealth. We find no justification for such a strained and overly-technical analysis of the insurance contract in this case. Accordingly, we will reverse the grant of judgment n.o.v., and reinstate the jury's verdict for the Plaintiff.

■ We do not find fault with the trial court's rejection of the Plaintiff's claims under Count Two of the Amended Complaint. In short, we agree with the trial court's determination that admissable evidence was not presented to establish the type of misrepresentation the Plaintiff alleged in his Amended Complaint, to prove deceptive or unfair practices which would entitle him to a recovery under the Unfair Trade Practices and Consumer Protection Law. We can discern no error in the trial court's rulings regarding the evidence on that issue, and regarding the Plaintiff's effort to amend his Amended Complaint at trial. Therefore, we reject the Plaintiff's contentions that a new trial should have been granted as to his claims under Count Two of the Amended Complaint.

The trial court's Order granting judgment *non obstante veredicto* is reversed and the jury's verdict in favor of the Plaintiff–Appellant is reinstated. In all other regards, the Order of the trial court is hereby affirmed.

POPOVICH, J. files a dissenting opinion.

POPOVICH, Judge, dissenting:

I cannot join in the Majority's reversal of the trial court's grant of the defendant's (State Farm Insurance Companies') motion for judgment *non obstante veredicto* and denying the plaintiff's (Richard E. Lowry's) motion for a new trial.

Since the verdict was in the plaintiff's favor, and all conflicts having been resolved in his favor as well, he is entitled to have the evidence supporting his verdict considered and all the rest rejected. *Valentine v. Philadelphia Transp. Co.*, 167 Pa.Super. 592, 594, 76 A.2d 471, 472–73 (1950). Reviewing the evidence in the light most favorable to him and giving him the benefit of every doubt-

ful or obscure fact and the reasonable inferences that a jury might deduce therefrom, as is required, *id.*,[1] the following facts were established by the verdict: On March 29, 1987, Steven Bell, an acquaintence of Richard E. Lowry, Jr., was "house sitting" Lowry's premises while Lowry was out-of-town on business.

Parked in the driveway of Lowry's home was a 1985 Chevrolet Corvette. It had no license plate, the doors were locked and the alarm system on the vehicle was activated. The vehicle belonged to Lowry and his father/plaintiff, the latter of whom had title in his name and insurance coverage with State Farm Insurance Companies ("State Farm").

During the trial, the parties stipulated that if Bell were to appear, he would admit to taking the keys to the Corvette, placing them in the vehicle's lock and deactivating the alarm. Then, Bell removed a set of plates from another of Lowry's vehicles, put them on the Corvette and drove it, albeit intending to return the vehicle to its rightful owner at all times. Nonetheless, while in Bell's possession, the Corvette was "totalled" in a single vehicular accident.

Once the plaintiff was informed of the incident, he contacted his insurance agent (Don Rugh) at State Farm and was told "there is no problem, you have coverage" under the "comprehensive" provisions of your policy. Thereafter, a Mr. Gracik advised the plaintiff that State Farm would not cover the loss unless the police would change the charge brought against Bell from "unauthorized use to theft", since the plaintiff had coverage for "theft" only.

The plaintiff's response was the filing of a two-count complaint alleging, in count one, that the Corvette was "unlawfully" taken by Bell against Lowry's express instructions. As a result, State Farm's denial of coverage under the "comprehensive" provision of the insurance policy was

---

1. Accord *Mannix v. Lamberton,* 167 Pa.Super. 393, 395, 74 A.2d 515, 516 (1950); *Holland v. Kohn,* 155 Pa.Super. 95, 97, 38 A.2d 500, 501–02 (1944) (Verdict winner is entitled to the benefit of the testimony favorable to him on both sides, not merely his own).

claimed by the plaintiff to be a breach of contract resulting in $29,163.49 in damages.

In count two, particularly paragraph 13(a), the plaintiff asserted that:

> The conduct of State Farm in refusing to pay the claim of the plaintiff ... was, if committed or performed with such frequency as to indicate a business practice, an unfair "claim settlement or compromise practice" within the meaning of the Pennsylvania Unfair Insurance Practice Act and, specifically, the defendant's conduct constituted the following unfair claim settlement or compromise practices, as defined in the Act:
>
> (a) "Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue" (40 P.S. § 1171.5(a)(10)(i))....

As such, the plaintiff charged State Farm with violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* (Supp. 1989–90) ("UTPCPL"), and sought treble damages thereunder.

In reply, State Farm filed preliminary objections in the nature of a demurrer to count two, claiming no "factual" allegations were contained therein evidencing that it engaged in a "business practice", "fraudulent conduct" or "conduct" likely to confuse the plaintiff. Further, a motion to strike paragraph 13 of count two was made for containing no "clear and precise statements of facts, but rather [only] ... legal conclusions" considered to be improper fact-pleading.

By order dated October 23, 1987, the demurrer to count two was sustained as it applied to plaintiff's Unfair Insurance Practices Act claims. The court found administrative procedures existed to remedy the allegations raised.

As to the motion to strike count two, with respect to alleged violations of UTPCPL, the court afforded the plaintiff the opportunity to amend his complaint. As herein relevant, the plaintiff did so in the following manner:

[Paragraph 13]

In refusing to pay the claim of the plaintiff, as set forth in the preceding paragraphs of this Complaint, the defendant, State Farm Insurance Companies, engaged in fraudlent [sic] conduct creating a likelihood of confusion and misunderstanding, and unfair or deceptive acts or practices within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. Section 201–2(4), and in particular, the defendant engaged in such conduct by:

(a) Misrepresenting the coverages of the insurance policy at the time the insurance contract was entered into, in that the defendant represented that the comprehensive coverage of the policy would provide coverage for losses caused by "theft", "larceny", "malicious mischief" and "vandalism", and that such losses would be paid for by the defendant, and yet the defendant failed to pay for the covered loss of the plaintiff after the car was taken from him by Steven Bell[.]

In answer to count one, the defendant averred that the Corvette was not "unlawfully taken" so as to constitute a "theft" or "larceny" since Bell "always intended to return the motor vehicle and never intended to deprive the owner ... of the use of it." (Paragraph 6) Consequently, the defendant denied coverage because the "loss" did not come within the "comprehensive" coverage provision "as there was no theft or larceny of the vehicle by Bell". (Paragraph 9)

In response to count two of the amended complaint, the defendant asserted:

13. ... The defendant refused to pay the claim of the plaintiff simply because the loss did not occur by reason of the causes set forth in the Comprehensive Coverage of the policy. The loss to the corvette was not caused by theft or larceny but was caused by the negligence of Steven Bell who was not authorized to use the motor vehicle.

The defendant did not engage in fraudulent conduct, did not confuse or mislead the plaintiff and did not

engage in unfair or deceptive acts or practices within the meaning of the Pennsylvania Unfair Trade Practices Consumer Protection Law (Act) 73 P.S. § 201-2(4).

The defendant:

(a) Did not misrepresent the coverages of the policy but issued a standard automobile insurance policy. The policy did provide comprehensive coverage for losses caused by theft, larceny, malicious mischief and vandalism. The loss in this instance was not covered by any of these terms.

A motion for partial judgment on the pleadings (as to the liability of the defendant) was filed by the plaintiff claiming that no issues of fact existed after the defendant's submission of its answer. Only a question of law as to whether the policy provided for coverage for the loss incurred as a result of the conduct of Bell, assuming that he did not intend to permanently deprive the plaintiff of the Corvette, was left to be decided. Following argument, the motion was denied. Thereafter, a trial was conducted in which, after the plaintiff testified, his counsel made a motion to amend paragraph 13(a) of the complaint to read that the plaintiff "was told by Mr. Rugh that the car was not driven and [he] could save money by carrying only collision coverage, and [counsel] would [have] like[d] to recall [the plaintiff] to testify about these matters."

Counsel for the defendant objected to permitting the plaintiff to testify to such matters because the apparent misrepresentation made when the policy was sold was not known by the defendant and, more importantly, "[t]hat was never pled." Moreover, the defendant urged that Rugh was retired in Florida and could not be produced at trial without a continuance. The motion, upon consideration by the trial court, was denied.

On rebuttal, the plaintiff recounted how Rugh stated that if the police would alter the charge against Bell from unauthorized use to theft, then coverage would exist. However, the plaintiff did testify that Rugh never admitted that the accident should have been covered.

With the instructions to the jury having been read, the defendant took exception to the trial court defining theft as not requiring that Bell have intended to deprive the plaintiff of the Corvette permanently upon taking it. In fact, the jury returned on two occasions to obtain clarification of the theft definition and whether the "permanent deprivation" element was necessary to constitute theft under the policy. On both occasions, the trial court stated such need not be the case and each time defendant's counsel objected to the instruction.

The jury returned a verdict in favor of the plaintiff and against the defendant in the amount of $21,100.00, a figure stipulated to by the parties in open court. Post-trial motions were filed and resulted in the trial court granting the defendant's judgment n.o.v. motion but denying the plaintiff's request for a new trial for its refusal to allow him to testify to his conversations with Rugh, *i.e.*, relating to representations supposedly made by Rugh at the time the policy was purchased, and not allowing the complaint to be amended to state specifically the details of the conversations. This appeal ensued with the entry of the order upon the docket of the Court of Common Pleas of Venango County.

The first issue to be addressed is whether the policy of insurance, which provided coverage for theft, larceny, malicious mischief and vandalism, encompassed the taking of the vehicle in question by Bell without the permission of the plaintiff, notwithstanding the fact he (Bell) had no intention of depriving the plaintiff of the vehicle permanently.

My discourse begins with the observation that the interpretation of policies of insurance, inasmuch as such policies are contracts, is governed by the principles applicable to the interpretation of contracts generally. *Mohn v. American Cas. Co.*, 458 Pa. 576, 326 A.2d 346 (1974). These principles include the requirement that the intention of the parties be determined from the words of the instrument, and that the contract of insurance must be read in its entirety, giving its unambiguous terms their plain and ordinary meaning. *Pa.*

*Manufacturers Ass'n Ins. Co. v. Aetna Cas. & Security Ins. Co.,* 426 Pa. 453, 233 A.2d 548 (1967).

However, rules of construction become germane when the meaning of the writing is ambiguous. *Ehrlich v. U.S. Fidelity & Guaranty Co.,* 356 Pa. 417, 51 A.2d 794 (1947). In this Commonwealth, the test to be applied to determine whether an insurance policy provision is ambiguous is whether reasonably intelligent men, on considering the provision in the context of the policy as a whole, would honestly differ as to its meaning. *Patterson v. Reliance Ins. Companies,* 332 Pa.Super. 592, 481 A.2d 947 (1984). Further, where technical terms are used in a policy, they are to be construed in their technical sense unless a contrary intention clearly appears. *Blue Anchor Overall Co. v. Pa. Lumbermens Mut. Ins. Co.,* 385 Pa. 394, 123 A.2d 413 (1956).

The relevant provisions of the policy in question provided for "comprehensive" coverage and "collision" coverage, the former of which was the only one carried by the plaintiff on the Corvette at the time of the accident. As such, a review of the applicable sections of the policy is in order to determine when reimbursement by the insurer was required under the terms of the document; to-wit:

COMPREHENSIVE— ... You have this coverage ...

1. Loss to Your Car. We will pay for *loss* to *your car* EXCEPT *Loss* by *COLLISION* but only for the amount of each such *loss* in excess of the deductible amount, if any.

   Breakage of glass, or *loss* caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, is payable under this coverage. *Loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

2. ...

COLLISION— ...

We will pay for *loss* to *your car* caused by collision....

*Collision*—means *your car* upset or hit or was hit by a vehicle or other object. (Emphasis in original)

All parties, as well as the court below, have focused their attention on the interpretation to be given to the term "theft" within the insurance. The defendant and the court below have concluded that "permanent deprivation" of the vehicle had to have been an intention of Bell at the time he took possession of the Corvette to come within the ambit of the policy. On the other hand, the plaintiff proffers that no such requirement is called for to bring Bell's conduct within the framework of the policy. My review of the treatises and case law on the topic lends credence to the position espoused by the defendant and the trial court. For example, at 5 Appleman, Insurance Law and Practice, § 3210 (1970), it is written:

> Recovery for damages to an automobile cannot be had under a theft policy unless the taking legally constituted theft. It is essential, in order for the insured to recover upon a contract of theft insurance, to show that he has been deprived of his automobile feloniously.
>
> Under these expressions, it has been held that a judgment cannot be recovered for damages caused to an automobile by taking it without the owner's consent, but without intent to steal. To constitute theft, it is essential that the person taking must have an intention to convert the automobile and to deprive the owner permanently of possession.[79] If the person intended to return it within a reasonable time, this would preclude recovery. Recovery could not be had for merely driving the automobile without the owner's consent,[81] when no intent to keep the automobile permanently is shown. Wrongful possession alone is insufficient. . . .

Under these rules, the taking of an automobile by a friend of the owner's son for the purpose of taking a girl home when such son was too drunk would not constitute "theft". Nor would the taking of the automobile for the purpose of getting a woman and returning to the place where the owner had been left amount to theft, the car

being wrecked on the road back. Taking for a joy ride would be similarly classified....

[79] Pa.—*Seither v. Pennsylvania Mfrs.' Ass'n Casualty Ins. Co.,* 1932, 159 A. 53, 104 Pa.Super. 260; *Hilliard Lumber Co. v. Harleysville Mut. Cas. Co.,* 1954, 103 A.2d 436, 175 Pa.Super. 94; *Allcorn v. Com. Mut. Fire Ins. Co.,* 1954, 102 A.2d 179, 174 Pa.Super. 489 (semi-trailer converted by employee).

[81] And see: Pa.—*Penn–Air, Inc. v. Indemnity Ins. Co. of North America,* 1970, 269 A.2d 19, 439 Pa. 511 (aviation insurance). [Footnotes omitted]

Upon a review of the cases cited in footnotes 79 and 81 in 5 Appleman, supra, it is obvious to this writer that Pennsylvania law is clear in requiring that where an insurance policy provides for recovery under its "comprehensive" provision listing "theft" as a ground for recoupment for a "loss", theft is to be interpreted to require that the owner be "deprived" of his property permanently as an elemental aspect of the actor's *intention* in taking the vehicle. Exemplary of such a belief is the Supreme Court's ruling in *Penn–Air, Inc. v. Indemnity Ins. Co. of North America,* 439 Pa. 511, 269 A.2d 19 (1970), wherein it approved of the Superior Court's earlier decisions in theft-of-automobile cases requiring payment for a "loss" sustained by the owner provided the vehicle was damaged as a result of a "theft". This tenet was adopted to deny recovery to an insured where his employee/mechanic was a passenger (along with the plane's owner's pilot, neither of whom had authority to be present in the plane) at the time an aircraft was taken for a flight and crashed. The insured's efforts to recover under his aircraft policy (for any monies due the owner of the plane stored with him and due a mechanical checkup) was denied because the loss was not sustained within the coverage afforded him by the policy since there was no evidence that the plane was taken with *animus furandi.* The Court stated the point thusly:

The Superior Court has had occasion to apply these principles to policies insuring against loss caused by theft of automobiles: *Hilliard Lumber Co. v. Harleysville Co.,* supra; *Seither v. Pa. Mfg. Ass'n. Cas. Ins. Co.,* 104 Pa.Super. 260, 159 A. 53 (1931); *Slomowitz v. Union Ins.*

*Co. of Canton,* 90 Pa.Super. 366 (1927). In all of these cases there was loss or damage following unauthorized taking; in all of them it was recognized that whether or not such taking was a theft depended on the plaintiff showing by a preponderance of the evidence that there was a felonious intent, "an intent to steal." In *Slomowitz* the insured's car was taken for an unauthorized ride by a discharged chauffeur of the insured, wrecked and abandoned; the jury found in favor of the insured, the Superior Court found no error, and affirmed. In *Seither* the jury found in favor of the insured, the Superior Court found no evidence of felonious intent, held that it was error to have submitted the case to the jury, and reversed. In *Hilliard* the jury found for the insured, the court below entered judgment n.o.v., the Superior Court held that there was circumstantial evidence from which the jury might have found the requisite criminal intent and reversed.

The facts in *Seither* are similar to those in the case at bar in that the converter was a mechanic into whose custody the insured had delivered his car for the purpose of having repairs made. When the work was finished the mechanic took the car, with his family in it, for a ride, and collided with a pole, causing serious personal injuries and extensive damage to the car. There was some evidence that the mechanic had been drinking at the time. In the opinion of the court, by Trexler, P.J., it was said 104 Pa.Super. at p. 264, 159 A. at p. 54:

"We have not gone so far in Pennsylvania that any unlawful taking is covered by the word 'theft.' * * *

"There must be some fact about the transaction from which it may be found that the matter was done animo furandi. We fail to find one.

"The sum and substance of the evidence presented by the plaintiff is that Wachter without right took the car to afford his relatives the pleasure of a ride. If there were the least evidence that the purpose was to flee with the car, or to dispose of it, or any act inconsistent

with the intention to return it to the garage after the ride was completed, there might be something for the jury to consider, but as the case was presented, we find nothing that should have been submitted to them for their decision."

In *Hilliard*, the person who took the automobile, at night and without permission, was the 26 year old son of the insured owner's employee, who did not live with his father in a family relationship. The car was wrecked 25 miles from where it had been taken. Upon discovering that the car was missing and that his son also was missing, the father had called the police because he "wanted to find out before he [the son] got into any trouble to get the truck back if I could." The son did not appear as a witness at trial. The court recognized that to constitute theft "There must be a criminal intent permanently to deprive an owner of his property", but felt that these facts were sufficiently different from those in *Seither* to permit the case to go to the jury.

439 Pa. at 520, 269 A.2d at 23.

It cannot be denied that there are jurisdictions which, in analyzing insurance policies listing "theft" as a criterion for the insurer's liability when the insured's vehicle is taken by a third party, do not equate "theft" with its common law or penal code definitions. See 5 Appleman, supra at §§ 3209, 3210. Nonetheless, I find precedent in this Commonwealth, *despite its vintage*, emanating from the Superior and Supreme Courts endorsing a definition of theft with "permanent deprivation" in the context of insurance policies. See 5 Appleman, supra. In other words, unlike the Majority, I believe we are bound by *stare decisis*, and we should leave it to the Supreme Court to decide whether it is time to modify the stance taken in the insurance arena with regard to whether the term "theft" should continue to require proof of *animus furandi* on the part of the party taking an insured's vehicle in order to hold the insurer liable for a loss incurred by the insured to his vehicle. See generally *Blum v. Merrell Dow Pharmaceuticals*, 385 Pa.Super. 151, 163–

66, 560 A.2d 212, 218–19 (1989), quoting *Mohn v. Hahnemann Medical College and Hospital of Philadelphia*, 357 Pa.Super. 173, 176, 515 A.2d 920, 922 (1986).

Moreover, contrary to the Majority, I read the Crimes Code of Pennsylvania, effective in 1973, to have perpetuated the distinction between theft and unauthorized use of a vehicle, such that a "theft" occurs where one exercises unlawful control over the movable property of another with the intent to "deprive" the owner thereof "permanently". See 18 Pa.C.S. §§ 3901, 3902.

The offense of unauthorized use, at *id.* § 3928, has retained its identity as a separate and distinct crime from "theft", as appears in 18 Pa.C.S. §§ 3921–3927, 3929–3932. See generally *Commonwealth v. Campbell*, 351 Pa.Super. 56, 505 A.2d 262 (1986); *Commonwealth v. Pemberth*, 339 Pa.Super. 428, 489 A.2d 235 (1985).

The Majority points to § 3902 ("Consolidation of theft offenses") in support of its proposition that the conduct of Steven Bell would be considered a "theft" under the 1973 Crimes Code, which it postulates abrogates the previous appellate decisions that hold to the contrary. With this I do not agree.

§ 3902 reads in pertinent part:

Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that would be committed in any manner that would be theft under this chapter. . . .

18 Pa.C.S. § 3902.

In each of the crimes defined under Chapter 39 ("Theft and related offenses") at subchapter B of the Crimes Code, a reading thereof is illuminating as to the symmetry of elements required to constitute a violation. For instance, to be guilty of "Theft by unlawful taking", the actor must have had the "intent to deprive" the owner of his/her property (18 Pa.C.S. § 3921(a)). "Theft by deception" also requires proof that the accused "intentionally obtain[ed] or

withh[e]ld[ ] property of another by deception ..." (Id. at § 3922(a)).

The element of "intent" in obtaining or withholding the property of another needs to be established to constitute a violation of § 3923 ("Theft by extortion"), as is the case with "Theft of property lost, mislaid, or delivered by mistake" (Id. at § 3924), *i.e.*, "intent to deprive the owner thereof".

Continuing, to be in violation of § 3925 ("Receiving stolen property") the actor must "intentionally" be in possession knowing the item is stolen, or believing it was probably stolen. The caveat being whether the actor intended to restore it to the owner.

The remaining offenses, denominated "Theft" under subchapter B, require that the actor "intentionally" engage in conduct in acquiring, retaining or disposing of another's property. See Id. at § 3926 ("Theft of Services"); § 3927 ("Theft by failure to make required disposition of funds received"—"intentionally deals with the property obtained as his own and fails to make the required payment or disposition"); § 3929 ("Retail theft"—"intention of depriving the merchant" of the possession, use or benefit of such merchandise without paying, etc.); § 3929.1 ("Library theft"—"intention of converting ... material to his own use"); § 3930 ("Theft of trade secrets—"intent" to obtain or wrongfully appropriate another's trade secret).

Only § 3928 ("Unauthorized use of automobiles and other vehicles") dispenses with the element of "intent" to deprive the owner of the property taken to establish a violation of the respective offense. In other words, all of the remaining offenses in subchapter B are "denominated" with the use of the term "theft" in describing the offense save for § 3928. Thus, because § 3928 does not constitute "conduct denominated theft" so as to "constitute[ ] a single offense" under a reading of § 3902, I find that § 3928 was not intended by the Legislature to be subsumed by Chapter 39 and be enumerated a "theft" offense given that the caption for Chapter 39 reads: "Theft *and Related Offenses* ". The

Legislature could have very easily labelled "unauthorized use" a "theft" offense but chose to keep it an offense related to theft but *not* its equivalent. This is evident by the fact that theft and unauthorized use have retained their separate identity for purposes of charging an accused with separate crimes which do not merge for sentencing purposes. See *Campbell,* supra; *Pemberth,* supra.

Unlike the Majority, I do not read the present Crimes Code to have rendered the various common law offenses of theft to have eradicated the distinct crime of unauthorized use under the broad nomenclature of "theft". If such were the case, § 3928 ("Unauthorized use") would have been identified with some phraseology incorporating "theft" in its caption and/or definition as referred to in § 3902. This did not occur. Accordingly, there being a retention of "theft" in the Crimes Code (requiring an intention to deprive the owner of his/her property on a permanent basis) as a separate and distinct crime from "unauthorized use" (in which intent to deprive the owner of his/her property is not mandated), I cannot join in the Majority's ruling which merely dismisses and ignores all the pre–1970 case rulings requiring *animus furandi* in "theft" cases, as well as reading too broadly the present 1973 Crimes Code to meld theft and unauthorized use into one category in assessing the insurance contract under scrutiny here.

The evidence is abundantly clear that the plaintiff, who worked for over thirty (30) years in the automobile parts, salvage and repair business and dealt with insurance companies "pretty steadily" in insuring "thousands" of his vehicles since 1957, admitted to being cognizant of the difference between "comprehensive" and "collision" coverages in his policy of insurance with State Farm. See Notes of Testimony at 37. The fact that he may not have read the terms of the insurance policy and relied upon his agent to protect his interests, see Notes of Testimony at 27, is to no avail in exculpating him from knowledge of the unambiguous language in the policy excluding liability for a "loss" under "comprehensive" coverage except for a "loss" result-

ing from a "theft", "larceny", "vandalism" or "malicious mischief".[2] See *Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 303, 469 A.2d 563, 565 (1983). Accordingly, I would hold that the plaintiff's initial claim is found wanting and I would deny it.

Involved in the second contention of the plaintiff, the Majority's resolution with which I do not disagree, is his protestation that the trial court erred in refusing him the chance to amend his complaint at paragraph 13(a) so as to refer to the insurance agent's purported remarks that the discontinuance of "collision" coverage, and merely retaining "comprehensive", would not diminish the plaintiff's insulation from "loss" incurred from other than the insured's use of the vehicle by placing it on the road.

The general proposition in this Commonwealth is that an amendment to a pleading which is otherwise proper may be made at any time during the pendency of the action unless it violates the law, prejudices the rights of parties or introduces a cause of action barred by the statute of limitations. See 29 P.L.E. Pleading, § 158.

Instantly, the plaintiff was accorded the opportunity to plead with specificity the basis for his unfair trade practices claim in count two of his original complaint. He later sought to exercise the same right during the pendency of the trial. Truly, in light of the proposed substance of the plaintiff's (second) amendment and testimony to buttress it at trial, it would have prejudiced the defendant by the inability to rebut such testimony with the agent (Rugh) who allegedly made such statements as to the scope of the insurance policy after discontinuance of the "collision" clause. See *Bata v. Central–Penn National Bank of Philadelphia*, 423 Pa. 373, 224 A.2d 174 (1966). The reason

2. Because vandalism and malicious mischief, as construed in insurance policies, require proof of an actual purpose, design or intent to injure, damage or destroy, or an act done willfully and intentionally, Bell's stipulated testimony of his intention to return the Corvette after using it in an undamaged state discounts the plaintiff's ability to have recovered under such language in the insurance policy. See 5 Appleman, supra at § 3208.

for the prejudice is Rugh's absence from the Common-wealth.

Moreover, in the amended complaint the plaintiff specifically made reference to the "misrepresentation" made to him by Rugh, *i.e.*, "the defendant represented that the comprehensive coverage of the policy would provide coverage for losses caused by 'theft', 'larceny', 'malicious mischief' and 'vandalism'." The defendant, at no time during the trial or in its pleadings denied that such coverage existed. Rather, the dispute was over whether Bell's conduct rose to the level of "theft", given that he always intended to return the vehicle to its owner.

Thus, I would find that even the plaintiff's amended complaint did little to elaborate on what he intended to prove as an ultimate fact. See 29 P.L.E. Pleading, §§ 1, 17. In light of the time afforded the plaintiff to crystalize what he intended to prove at trial, as evidenced by the court's allowance of an amendment during the pleading stage to focus on his objective as to the proof side of his case, I fail to detect an abuse of discretion on the part of the trial court in denying the plaintiff's oral request in the midst of trial to inject fact-pleading (via the amendment route) that would undoubtedly have "prejudiced" the defendant with the absence of the witness/Rugh from this jurisdiction.[3] *Id.* at § 158.

For the reasons stated herein, I would affirm the order of the court below granting judgment n.o.v. to the defendant and denying the plaintiff's request for a new trial.

---

**3.** As noted by the trial court in its opinion to us, had the plaintiff indicated at an earlier stage of the proceedings what he intended to testify to with regard to the insurance contract, this would have allowed the defendant the chance either to depose Rugh or have him subpoenaed for trial, if need be, to rebut the plaintiff's testimony.

With the trial not yet commenced and the fact-pleading not completed between the parties, the plaintiff had the occasion to remedy his defective paragraph 13(a). He failed to comply with the Rules of Civil Procedure in setting forth the facts which he intended to prove at trial on two occasions. Thus, this writer is not sympathetic to the position fostered by the plaintiff on appeal seeking a reversal of the trial court's denial of his request to amend his complaint.