622 A.2d 286

**Renee Y. HACKNEY, Appellant,**

**v.**

**John O. WOODRING, Jr. & Lipco, Inc.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1992.

Filed Jan. 25, 1993.

Reargument Denied April 2, 1993.

98

Robert Glessner, York, for appellant.
Larry C. Heim, York, for appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

This is an appeal from the grant of judgment notwithstanding the verdict on the ground that the evidence presented at trial was insufficient, as a matter of law, to create an issue of fact for the jury on a claim of intentional infliction of emotional distress. We reverse.

On July 9, 1979, Renee Hackney filed a Complaint seeking damages for various torts, including assault, battery, false imprisonment, and intentional infliction of emotional distress based on the conduct of her employer, John Woodring, at the Little People Day Care Center. Hackney, an eighteen year old college student, was employed as a teacher's aide at the day care center during the time when the conduct occurred. Hackney contended that Woodring had, during numerous incidents, forcibly held her down on his lap, and engaged in unwanted touching, fondling, and spanking. Hackney also told of one incident in which Woodring threatened Hackney's life while ripping off her clothes and exposing himself before the presence of a janitor on the school grounds forced him to stop his attack. Hackney testified that whenever she had contact with Woodring, she became frightened and upset and broke out in a red blotchy rash. Her grades at college fell. Hackney also testified that while she suffered from humiliation, loss of self-esteem, nightmares and insomnia, she never sought the help of a physician or psychologist for her problems. Woodring, after spreading rumors about Hackney, eventually discharged her from her job at the school, after publicly praying over her. Hackney testified that her loss of self-esteem and humiliation were so great she felt forced to relocate to another state.

A jury trial was held on August 5 and 6, 1991. The jury found in favor of Woodring on the claims for assault, battery, and false imprisonment, but, found in favor of Hackney on the claim for intentional infliction of emotional distress. The jury awarded Hackney $15,000 in compensatory damages.

Following the jury verdict, Woodring filed a motion for judgment notwithstanding the verdict, pursuant to Pa.R.C.P. 227.1(a)(3), on the ground that Hackney, by failing to introduce expert medical testimony, had not sustained her burden of proof as to damages. The trial court granted Woodring's motion. It is from this order that Hackney appeals.

When reviewing the grant of a judgment notwithstanding the verdict, the appellate court must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference which can be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Pirozzi v. Penske Olds–Cadillac–GMC*, 413 Pa.Super. 308, 605 A.2d 373 (1992). Judgment notwithstanding the verdict may only be granted in the clearest of cases, where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Ingrassia Construction Co., Inc. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478 (1984). It is under this standard that we will review the present case.

Hackney contends that the trial court erred in granting a judgment notwithstanding the verdict. She asserts that where there is sufficient evidence of outrageous conduct and resulting emotional distress, expert medical testimony is unnecessary in order for the jury to find liability for the tort of intentional infliction of emotional distress. We agree.

The courts in this jurisdiction have recognized a cause of action under the Restatement (Second) of Torts § 46 for the intentional infliction of emotional distress. *See e.g. Field v. Philadelphia Electric Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989). That section states in pertinent part:

§ **46. Outrageous Conduct Causing Severe Emotional Distress**

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

 To prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove that defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress. *Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990). Liability will be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Restatement (Second) of Torts, § 46 comment d. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Id.* The extreme and outrageous character of conduct may arise from an abuse by a person in a position of actual or apparent authority over another, or by one with the power to affect the other's interests. Restatement (Second) of Torts § 46 comment e.

 It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Restatement (Second) of Torts § 46 comment h. *Motheral,* at 423, 583 A.2d at 1188. Where reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. Restatement (Second) of Torts § 46 comment h; *Motheral,* at 423, 583 A.2d at 1188.

In the present case, the jury, under the direction of the trial court, found Woodring's behavior to be so outrageous that they awarded Hackney $15,000 in compensation. Woodring does not contest the nature of his actions but rather, alleges that there is a lack of proof as to the damages suffered by Hackney. Woodring argues that the judgment notwithstanding the verdict should be affirmed because in order to establish that she suffered severe emotional distress, Hackney was compelled to offer expert medical testimony as proof of her suffering.

The trial court, in granting judgment notwithstanding the verdict, relied upon *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988 (1988), as authority requiring the introduction of expert medical testimony to establish the tort of intentional infliction of emotional distress. This reliance is misplaced.

In *Kazatsky,* the appellants had filed a claim against the owners of a cemetery for the intentional infliction of emotional distress with regard to the treatment they had received after purchasing cemetery plots for their deceased children. There, the appellants, after purchasing the cemetery plots, refused to pay the cemetery for the perpetual care and maintenance of the plots. The appellants were informed that there would be no care of the gravesites unless the fee was paid. After observing the deteriorating conditions at the gravesites over time, the appellants filed suit against the cemetery. Our supreme court found that the appellants had failed to establish their claim, as the only evidence of their emotional distress was their own unsupported testimony. *Id.* at 191, 527 A.2d at 992.

The present case contrasts with the controversy presented in *Kazatsky.* In *Kazatsky,* the dispute was primarily contractual, even though the subject of the dispute, cemetery plots, could perhaps evoke strong emotions in some individuals. Here, we are confronted with the sexual harassment, intimidation, abuse, and retaliatory discharge of a young woman, just eighteen years of age, in her first job, by her employer, a man in a position of authority. Hackney's testimony, which was supported by the testimony of two of her fellow workers, was compelling. After describing numerous incidents of unwanted touching and fondling by Woodring during school hours, Hackney described one incident which happened when she accompanied Woodring, at his request, to the school "home office":

And he was holding me down and he was threatening me and told me that if I didn't do what he said, that he would kill me and that nobody would believe me anyway and that

my job depended on it, and he tried—kept telling me this was for my self-esteem.

And he put his hands all over me, and I kept trying to tell him to stop and push away and to leave, and he kept telling me, This is for your self esteem, you'll feel better.

He had my—I was standing up at one point in the resistance, and he pulled me back down. Sometimes I would stand back up. He pulled me back down.

At one point when I stood up, he stood up and pulled the top of my pants where they unsnap and kind of zip down. Then I set back—he pulled me back down. I stood back up, and he pulled my pants down not all the way to the floor but down close to my knees, and he kept telling me I had to do it, it was for my self-esteem, that nobody would believe me, and that Carolyn and everybody would be really mad at me, that nobody would believe me if I told it, that everybody would think I was lying.

At one point when he had me pushed up against the desk, we heard a noise out in the hall. And he looked at me and he said, that must be the janitor. So he told me to get behind the door and not say anything or he would kill me, and I was—I was scared.

*　　*　　*　　*　　*　　*

He told me nobody would believe me, and he told me that he would kill me. And he had told me on other occasions that he had a gun in the office.

N.T., August 5, 1991, at 63–65. Several times, Hackney described her emotional trauma. At one point, she stated:

I had nightmares about this. I couldn't sleep sometimes 'cause—I was afraid, too, 'cause he had threatened me on more than one occasion, and he told me that at some point he was going to come and talk to my parents. And he really made me afraid.

And so I felt like in my situation the best thing was just to leave, . . .

N.T., August 5, 1991 at 78.

Unlike in *Kazatsky*, where the appellants found the demand for payment for the care and maintenance of the gravesites to

be "infuriating and extremely upsetting", in the present case, Hackney's testimony reveals a history of continued sexual harassment and abuse suffered at the hands of her employer.

The Restatement addresses the issue of proof of severe emotional distress in comment j to § 46 of the Restatement (Second) of Torts. There, emotional distress is described as including all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, chagrin, disappointment, worry, and nausea. Restatement (Second) of Torts § 46 comment j. This comment also states:

> The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress existed.

*Id.* Nowhere in § 46, or the comments to that section, is the introduction of expert medical testimony required or even mentioned. The question, in this case, of whether severe emotional distress existed, is one of fact, which can be decided by a jury, unaided by expert testimony.

■ The emotional reactions discussed in comment j to § 46 predate the advent of psychiatry and can readily be established without the testimony of one learned in that area of medical science. *Kazatsky,* 515 Pa. at 199, 527 A.2d at 996 (Larsen, J., concurring). The introduction of expert testimony only becomes necessary when the testimony is so distinctly related to some science, skill or occupation as to be beyond the knowledge or experience of the average layperson. *Commonwealth v. Dunkle,* 529 Pa. 168, 181, 602 A.2d 830, 836 (1992); *Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 582, 574 A.2d 1084, 1092 (1990).

Here, Hackney's testimony, supported by that of her coworkers, revealed the severe emotional trauma which Woodring caused her to suffer. The suffering, described by Hackney, is within the understanding of the average juror. While the average juror may not have personally experienced the

extreme fright, humiliation, embarrassment and loss of self-esteem to which Hackney testified, these feelings are within the realm of common understanding which all jurors bring with them to the jury box. Expert testimony was not necessary to explain the issues in this case, and would have only served the purpose of buttressing Hackney's credibility, thus usurping the province of the jury. *See e.g. Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355 (1988).

 The greater the outrage, the less should be required of a plaintiff, by way of proof, to establish severe distress; the distress can be inferred from the nature of the conduct itself. Restatement (Second) of Torts § 46 comment j; *Kazatsky*, 515 Pa. at 200, 527 A.2d at 996 (Larsen, J., concurring). Expert testimony may be useful in certain cases in which the plaintiff wishes to establish suffering from a specific malady with which the average person is unfamiliar, or where the evidence of the outrageous nature of the defendant's behavior is not self-evident. This is not such a case.

Moreover, conduct that deserves the label "outrageous" is outrageous precisely because it tends to produce distress in normally constituted persons. *Kazatsky*, at 200, 527 A.2d at 996 (Larsen, J., concurring). In the present case, once Woodring's conduct was revealed, he blamed Hackney, charging that she was unstable and needed psychiatric care. N.T., August 5, 1991, at 73. Seeking a psychiatrist's care, in order to relieve psychic distress, is a notion yet to be accepted by a large portion our population. In fact, Hackney proudly testified at trial that at no time was she under the care of a psychiatrist. N.T., August 5, 1991, at 74. To have required Hackney to have seen a psychiatrist at a time of severe distress provoked, not by her own psychological problems, but by treatment inflicted upon her by another, could have compounded the stress that she was already experiencing. *See Kazatsky*, at 199, 527 A.2d at 996 (Larsen, J., concurring); Brief for Appellant at 13.

To require "expert proof" of severe emotional distress will eliminate recovery under this tort for large segments of our population including those unaccepting of psychiatry as a

method of addressing personal distress, as well as those who have neither the funds to pay for, nor the access to, a psychiatrist. This is unacceptable, as a matter of public policy.

We conclude that expert testimony was not required under the facts and circumstances of the present case. Therefore, the judgment notwithstanding the verdict cannot stand. Accordingly, we reverse and remand to the trial court with instructions to reinstate the jury's verdict.

Order granting judgment notwithstanding the verdict is REVERSED. Case REMANDED with instructions. Jurisdiction relinquished.

TAMILIA, J., files a Dissenting Opinion.

TAMILIA, Judge, dissenting.

I respectfully dissent to the Opinion of the majority which reverses the trial court decision granting judgment n.o.v. and remands the case for reinstatement of the verdict in favor of the plaintiff, Renee Y. Hackney.

This is an appeal from the November 21, 1991 Order granting defendants' motion for judgment notwithstanding the verdict in which it was averred appellant had failed to present competent medical evidence to establish her claim of intentional infliction of emotional distress. Appellant, then an 18-year employee at Woodring's day care center, alleged appellee's repeated improper behavior toward her, which included sexual innuendos and unwanted touching, caused her, inter alia, to become emotionally and physically distraught resulting in a loss of self-esteem, reputation and plummeting college grades. Nevertheless, during this indeterminate time period, appellant did not seek medical attention. A jury found in favor of defendant on Hackney's claims of assault and battery and false imprisonment but in favor of appellant on the claim of intentional infliction of emotional distress and awarded her $15,000 in damages. The trial court, however, reversed the verdict and granted appellee's motion for judgment n.o.v., relying on the Supreme Court case of *Kazatsky v. King David*

*Memorial Park Inc.*, 515 Pa. 183, 527 A.2d 988 (1987), which held the plaintiffs' failure to establish the existence of alleged emotional distress by competent medical evidence barred their claim. *Id.* Plaintiff has brought this appeal arguing expert medical testimony is unnecessary to establish intentional infliction of emotional distress provided she has proven defendant's outrageous conduct toward her, as defined in Comment d. of section 46 of Restatement (Second) of Torts.

The grant of judgment n.o.v. may be entered only in a clear case where the facts are such that no two persons could fail to agree the verdict is improper and should not be entered where evidence is conflicting upon a material fact. *Kearns v. Phila. Life Ins. Co.*, 401 Pa.Super. 292, 585 A.2d 53 (1991). On an appeal from the Order of a trial court granting judgment n.o.v., the Superior Court is required to consider the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Lowry v. State Farm Ins. Co.*, 392 Pa.Super. 77, 572 A.2d 700 (1990). For the reasons which follow, I would affirm the trial court's Order denying relief to the appellant.

Before addressing the crux of the issue before this Court, I am constrained to disagree with the majority which holds intentional infliction of emotional distress is an actionable tort in Pennsylvania. *See Kazatsky, supra; see also Baker v. Morjon Inc.*, 393 Pa.Super. 409, 574 A.2d 676 (1990) (cause of action for intentional infliction of emotional distress is denied because plaintiff failed to comply with the standards in *Kazatsky*, that is, neither the requisite degree of the defendant's outrageousness or the nature and extent of the emotional injuries alleged justified a finding of liability); *Ford v. Isdaner*, 374 Pa.Super. 40, 44, 542 A.2d 137, 139 (1988) (*"Kazatsky* makes clear that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania"). Until such time as our Supreme Court rules otherwise, this Court is obliged to follow the findings and reasoning of *Kazatsky* and its progenies.

Assuming, however, for the sake of argument, Pennsylvania has recognized this tort, I turn now to the issue before this

Court: whether expert medical testimony is required to substantiate a claim for intentional infliction of emotional distress. In *Kazatsky,* the most recent Supreme Court case to address the viability of the tort of intentional infliction of emotional distress, the parents of twins who died shortly after birth brought an action in equity seeking, among other claims, damages for the emotional distress caused by cemetery caretaker's allegedly outrageous conduct of using threats to coerce the plaintiffs into purchasing a perpetual care contract for the children's gravesites. Because a compulsory nonsuit was entered, the jury was not required to determine whether the defendant's conduct reached the level of outrageousness that would support a claim for damages as contemplated under Comment d of section 46 of the Restatement (Second) of Torts, which sets forth the standard for what constitutes extreme and outrageous conduct. The *Kazatsky* Court did provide, however, for our guidance, an in-depth discussion of Pennsylvania law addressing recovery for psychic injury:

> It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. We therefore conclude that *if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.*

*Kazatsky, supra,* 515 Pa. at 197, 527 A.2d at 995 (emphasis added). This excerpt from the Supreme Court's opinion indubitably declares expert medical testimony is a necessary element of any possible successful cause of action for intentional infliction of emotional distress. The majority's unconvincing attempt to distinguish *Kazatsky* from the case before us

because the former action emanates from a contractual dispute while the latter stems from alleged sexual harassment is illogical. Surely the emotional distress suffered by parents of the deceased twins in *Kazatsky,* despite the fact the premise on which they based their claim sounded in contract as opposed to tort, was no less than that suffered by the plaintiff herein. Additionally, I am unable to fathom how the nature of the underlying lawsuit alters the prerequisites to establish a legitimate cause of action for the tort under consideration. Contrary to the majority's Opinion, this is a case in which expert testimony is crucial. Although, if true, I find appellee's behavior as described in detail by the majority to be abominable, and I most certainly have no reason to doubt the sincerity of appellant's distress, the fact remains she has offered no tangible proof of the mental and physical anguish she has allegedly endured. Unfortunately for the appellant and all those who suffer at the hands of an emotionally abusive individual, mental anguish endured and its lingering aftermath are not readily identifiable or easily recognizable by a lay individual and, therefore, the need for expert testimony to establish the same is paramount. *See Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 574 A.2d 1084 (1990).

Because appellant failed to present expert testimony to substantiate the existence of the emotional distress allegedly suffered by her as a direct result of appellee's actions, I would affirm the November 21, 1991 Order granting judgment n.o.v. in favor of the defendants.