**Payne v. Gleichman**

*Mark E. Halbruner,* for plaintiff.
*Daniel K. Deardorff,* for defendant.

BAYLEY, *J.,* September 9, 1994—Plaintiff, Bonnie L. Payne, filed a complaint against defendant, J. Donald Gleichman Jr., individually and t/d/b/a C.S. Group, seeking damages on counts of defamation, intentional interference with contractual relations, and intentional infliction of emotional distress. Defendant has moved for summary judgment. Summary judgment may be granted under Pa.R.C.P. 1035(d) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The entire record must be reviewed in a light most favorable to the non-moving party. *Boring v. Erie Insurance Group,* 434 Pa. Super. 40, 641 A.2d 1189 (1994).

The facts necessary to resolve this motion are as follows. From June 1991 through August 1993, plaintiff operated a temporary employment agency, Accent Temps, in defendant's commercial building at 3344 Trindle Road, Camp Hill. On August 17, 1993, plaintiff sold her closely-held corporation, Accent Temps Inc., to Marianne Fidler. Plaintiff and Marianne Fidler had agreed that plaintiff would be hired as a consultant/sales coordinator at $30,000 annually by Accent Temps under Fidler's new ownership. On August 30, 1993, plaintiff and Marianne Fidler met with defendant to discuss the assignment of plaintiff's lease to Fidler. With all three present, plaintiff told defendant that she was going to work for Fidler. Defendant sought to include a clause in the lease setting forth that alcoholic beverages would not be consumed on the leased premises. Plaintiff then asked defendant why he wanted such a restriction. De-

fendant stated: *"I know there's been drinking in your [plaintiff's] office; I've found beer bottles and no one else in the building drinks."*

It is those words that plaintiff claims defamed her. She also claims that by those words defendant intentionally interfered with her contractual relations because they resulted in Marianne Fidler withdrawing her offer of employment. That subjected plaintiff to a restrictive covenant in her sales agreement with Fidler that provides that she will not for the next five years, directly or indirectly, own, manage, be employed by or be connected in any manner with any temporary employment agency or related business within a 50 mile radius of 3344 Trindle Road, Camp Hill. Plaintiff further claims that these events have caused her emotional distress that was intentionally inflicted by defendant.

Defendant seeks summary judgment on all counts. He maintains that it is undisputed that his alleged defamatory statement was true. During depositions plaintiff admitted there had been a Christmas party in December of 1989, during which wine and beer were consumed in her leased premises. She admitted that on another occasion, when a new client had been secured, a bottle of champagne was opened on the business premises from which toasts were made. Plaintiff testified that she had subleased a room on the premises to Mark Howe and that she knew Howe had consumed alcohol on the premises from time to time.[1]

In *Dunlap v. Philadelphia Newspapers Inc.,* 301 Pa. Super. 475, 448 A.2d 6 (1982), the Superior Court stated:

"Thus the issue is *whether a finding of falsity may be based on a false inference drawn from true facts. We believe it may be.*

---

1. Marianne Fidler did agree to a clause in the lease that alcoholic beverages would not be consumed on the leased premises.

"Taken in context, the statement implied that appellee was in car 17B on the day in question. This implication was false; the evidence is that when the photograph was taken, another officer was in car 17B. N.T. 6/8/79, 361. *It seems to us that 'true facts' that in context imply a falsehood are, in an action for defamation, not 'true.'* As one commentator has said:

"A publisher is, of course, liable for the *implications* of what he has said or written, not merely the specific, literal statements made. To say, for example, that a man and a woman married, but not to each other, spent a night together in a hotel room, will be interpreted as an assertion that the pair engaged in sexual activities, because the average reader will assume that 'they saith not a *pater noster* there.' ...

"The literal 'truth' of a publication need not be established, only that the statement is 'substantially true.' *The proof of 'truth' must go to the 'gist' of 'sting' of the defamation. The test is 'whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.* Sack, *Libel, Slander, and Related Problems,* 50-51, 137-138 (1980). (footnotes omitted) (emphasis added)

"No Pennsylvania case has addressed this issue. Some cases say that an 'innuendo' may be the basis of defamatory meaning. *Bogash v. Elkins,* 405 Pa. 437, 176 A.2d 677 (1962) (innuendo must be warranted, justified and supported by the publication); *Sarkees v. Warner-West Corp.,* 349 Pa. 365, 369, 37 A.2d 544, 546 (1944) (innuendo may not 'put an unfair and forced construction on the interpretation of the publication'); *Naulty v. Bulletin Co.,* 206 Pa. 128, 55 A. 862 (1903) (purpose of innuendo is to define defamatory meaning). But as used in these cases, 'innuendo' refers to the early common-

law method of pleading defamatory meaning and not to the 'implication' of the communication. As explained by Judge Adams, writing for the Third Circuit:

"The term 'innuendo' has two possible meanings in the law of defamation, one of which is technical and the other of which is not. The narrow, technical meaning of the term is associated with the common-law system of pleading, under which an 'innuendo' was an explanation of the defamatory meaning of a communication in light of extrinsic circumstances, the existence of which was averred to in a prefatory statement called an 'inducement.' See Restatement (Second) of Torts, §563, comment (f) (1977). That is *not* the meaning of the word as employed in this opinion. The second, and here the relevant, meaning of 'innuendo' is that which it has in common language, namely, the insinuation or implication which arises from the literal language used in a statement or set of comments. *Pierce v. Capital Cities Communications Inc.,* 576 F.2d 495, 499 n.7 (3d Cir.) (statements and 'innuendoes' in broadcast not capable of defamatory meaning under Pennsylvania law), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978).

"In the absence of any Pennsylvania case, we are free to adopt, and have concluded that we should adopt, the approach of sister states, and *hold that the literal accuracy of separate statements will not render a communication 'true' where, as here, the implication of the communication as a whole was false.* See Sack, *supra* at 50-51, 139-40 (collecting cases). As one court has said, 'It is not sufficient to take every sentence separately and demonstrate its individual accuracy, detached and wrenched out of context.' *Clark v. Pearson,* 248 F. Supp. 188, 191 (D.D.C. 1965)." (footnotes omitted) (emphasis added) *Id.* at 491-493, 448 A.2d at 14-16.

A statement is defamatory if it "tends to blacken a person's reputation or expose him to public hatred, contempt or ridicule or injure him in his business or profession." *Cosgrove Studio and Camera Shop Inc. v. Pane,* 408 Pa. 314, 317, 182 A.2d 751, 753 (1962). In response to *plaintiff's · question to defendant* as to why he wanted a prohibition on the consumption of alcohol on the leased premises, defendant said, "I know there's been drinking in your office; I've found beer bottles and no one else in the building drinks." In her brief, plaintiff argues:

"Although any one or more of defendant's statements may have been literally true, when taken together, the statements created an impression that plaintiff and her employees had regularly consumed beer on the premises. Moreover, the context in which defendant made the statements suggested that plaintiff and her employees had a problematic habit of consuming beer while at the work place. Furthermore, defendant's statements implied that plaintiff and her employees had consumed beer on the premises without defendant's authorization."

We disagree. These are not inferences that could *reasonably* be implied from the *context* in which defendant responded to *plaintiff's question* as to why he wanted a clause in the lease that alcoholic beverages would not be consumed on the premises. It is undisputed that there had been drinking in plaintiff's leased premises. That truth is all that Marianne Fidler learned from the conversation between plaintiff and defendant. There is no evidence that would support a verdict by a jury that plaintiff was defamed. See *Parano v. O'Connor,* 433 Pa. Super. 570, 641 A.2d 607 (1994).

There is also no evidence to support a verdict against defendant for intentional infliction of emotional distress. A jury could not conclude that defendant by extreme

and outrageous conduct intentionally or recklessly caused severe emotional distress to plaintiff. See *Hackney v. Woodring,* 424 Pa. Super. 96, 622 A.2d 286 (1993).[2] As to plaintiff's claim for intentional interference with her contractual relations, the Superior Court has stated in *Yaindl v. Ingersoll-Rand Co.,* 281 Pa. Super. 560, 422 A.2d 611 (1980):

"That action arises when a person intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract. ... Restatement (Second) of Torts §766 (1979)." (emphasis added) *Id.* at 573-74, 422 A.2d at 618.

Section 772 of the Restatement (Second) of Torts provides:

"One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the others contractual relations, by giving the third person

"(a) *truthful information,* or

"(b) honest advice within the scope of a request for the advice."

Comment (b) to this section of the Restatement states:

"*Truthful information.* There is of course no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this

---

2. We note, that even if plaintiff could recover on such a count, she would have to present competent medical evidence to support the claim. *Kazatsky v. King David Memorial Park Inc.,* 515 Pa. 183, 527 A.2d 988 (1987); *Baker v. Rite Aid Corp., 43 Cumberland L.J. 119 (1993).*

164

instance is clearly not improper. This is true even though the facts are marshalled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested."

In the present case, not only is there no evidence that defendant intentionally and improperly interfered with the prospective contractual relations between plaintiff and Marianne Fidler, the information that Fidler learned from defendant in response to plaintiff's question was the truth. On these facts there is no cause of action for intentional interference with contractual relations that can be submitted to a jury. For the foregoing reasons the following order is entered.

ORDER

And now, September 9, 1994, the motion of defendant for summary judgment on all counts of plaintiff's complaint, is granted.