**NEW YORK LIFE INSURANCE COMPANY, Appellant,**

v.

**Lawrence T. JOHNSON, Sr., Executor of the Estate of Kirk Johnson; Lawrence T. Johnson, Sr., In His Own Right, Appellees.**

**No. 90–1406.**

United States Court of Appeals, Third Circuit.

Argued Dec. 10, 1990.

Decided Jan. 15, 1991.

Alan K. Cotler (argued), Christopher M. Arfaa, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant.

Wallace L. Walker (argued), Eileen Epley, Philadelphia, Pa., for appellees.

Before SLOVITER, MANSMANN, Circuit Judges, and DEBEVOISE, District Judge[*].

OPINION OF THE COURT

DEBEVOISE, District Judge.

This is an appeal from the district court's dismissal of the complaint of plaintiff/appellant New York Life Insurance Company ("New York Life"). Pursuant to 28 U.S.C. § 2201, New York Life had sought a judgment declaring that a $50,000 insurance policy it had issued on the life of Kirk Johnson, the deceased son of defendant/appellant Lawrence T. Johnson, Sr. ("Mr. Johnson"), was void *ab initio* because it had been induced by fraud.

---

[*] Hon. Dickinson R. Debevoise of the United States District Court for the District of New Jersey, sitting by designation.

At a hearing on cross-motions for summary judgment and at the trial before the district court it was undisputed that: (i) Kirk Johnson stated in his application for the insurance policy that he had not smoked in the previous twelve months and that he had never smoked cigarettes. (ii) Those statements were false, and in fact Kirk Johnson had smoked since 1973 and during the month he applied for the policy he was smoking approximately 10 cigarettes per day. (iii) Both Kirk Johnson and Mr. Johnson, who was present when the application was completed, knew that the statements were false. (iv) Kirk Johnson's smoking practices were material to the risk which was assumed by New York Life when it issued the policy, because it relied upon his statements when it established the premiums to be paid. After the trial the district court found that had New York Life been informed of the true facts it would have issued a $50,000 life insurance policy on the life of Kirk Johnson but that the premium rate would have been in a higher amount readily ascertainable from an exhibit in evidence.

This is a diversity of citizenship case requiring application of Pennsylvania law. The district court concluded, and the parties agreed, that under Pennsylvania's conflict of laws rule Pennsylvania substantive law is applicable. The decided Pennsylvania cases have held that an insurance policy obtained by means of a material misrepresentation will, if challenged within the period of contestability, be declared void *ab initio*.[1] No Pennsylvania court has applied this rule in the context of a misrepresentation of smoking habits.

The district court predicted that in a smoking misrepresentation case where the insurance carrier would have issued a life insurance policy at an ascertainable higher premium if supplied with the correct smoking information, the Pennsylvania courts would not apply the "Draconian" remedy of voiding the policy *ab initio*. Rather, the district court concluded, in the present case either the Pennsylvania courts would re-

duce the proceeds of the policy by the amount by which the premium would have been enlarged had New York Life known of Kirk Johnson's smoking history or else the Pennsylvania courts would reduce the face amount of the policy to that amount of insurance that would have been purchased by the amount of premiums that were in fact paid. The district court recognized "that [this] rule that seems to me a proper and equitable one has no support in any of the decided jurisprudence" and that "[t]he smoking cases, albeit not Pennsylvania cases, are exactly to the contrary of my view." (Bench Op. at A–377).

A district judge's prediction of state law is a determination of law as to which our review is plenary. *Compagnie Des Bauxites De Guinee v. Insurance Co. of N. Am.*, 724 F.2d 369 (3d Cir.1983). An examination of the pertinent Pennsylvania cases and cases from other jurisdictions leads us to conclude that the district court did not predict correctly what the Pennsylvania courts would do in the circumstance of this case. We conclude that Pennsylvania law requires that the policy in question be declared void *ab initio*.

## I.

The facts are undisputed. They were established by a comprehensive stipulation by the parties, documentary evidence and the testimony of the only witness, Mr. Johnson's expert David T. Warner, a retired insurance company executive.

Kirk Johnson applied for life insurance with New York Life on October 7, 1986. Question 12 of the application required him to provide information as to his past and present smoking habits. In answer to the question he represented that he had not smoked in the past twelve months and that he had never smoked cigarettes. Just above Kirk Johnson's signature at the end of the application is the statement that "[a]ll of the statements which are part of the application ... are complete and true to

---

**1.** Each insurance policy delivered in Pennsylvania must contain a provision stating that the policy "shall be incontestable after it has been in force, during the lifetime of the insured, two years from its date of issue." Pa.Stat.Ann.Tit. 40, § 510(c) (Purdon 1971).

the best of the knowledge and belief of those persons who made them."

The true facts were that Kirk Johnson had smoked for thirteen years and that during the month that he applied for the policy he was smoking approximately 10 cigarettes per day. Both Kirk Johnson and his father, Mr. Johnson, were aware of the facts. Had New York Life known these facts it would have offered a life insurance policy to Kirk Johnson, but the premium it would have demanded would have been substantially higher.

Kirk Johnson died on July 17, 1988, within two years of the application for insurance, for reasons unrelated to smoking. Mr. Johnson, the beneficiary, filed a claim for the proceeds of the policy. New York Life investigated and learned of the misrepresentations. It denied the claim and sought to effect rescission by tendering to Mr. Johnson a check for the premiums paid under the policy. The tender was refused and New York Life commenced this declaratory judgment action.

## II.

█ Under Pennsylvania law an insurance policy is void for misrepresentation when the insurer establishes three elements: (1) that the representation was false; (2) that the insured knew that the representation was false when made or made it in bad faith; and (3) that the representation was material to the risk being insured. *E.g., Lotman v. Security Mut. Life Ins. Co.,* 478 F.2d 868, 870 (3d Cir. 1973); *Shafer v. John Hancock Mut. Life Ins. Co.,* 410 Pa. 394, 398, 189 A.2d 234, 236 (1963); *A.G. Allebach, Inc. v. Hurley,* 373 Pa.Super. 41, 52, 540 A.2d 289, 294 (1988).

██ The district court recognized this well-established statement of Pennsylvania law. Further, the court concluded that "[t]here is no question on this record that the smoking habits of the decedent are material to the risk assumed by the insurer." *New York Life Ins. Co. v. Johnson,* 731 F.Supp. 704 (E.D.Pa.1990) (opinion on parties' cross-motions for summary judgment, both of which were denied). A mis-

represented fact is material if being disclosed to the insurer it would have caused it to refuse the risk altogether or to demand a higher premium. *McCaffrey v. Knights & Ladies of Columbia,* 213 Pa. 609, 63 A. 189 (1906). In the present case disclosure of the true facts about Kirk Johnson's smoking practices would have caused New York Life to have demanded higher premiums.and thus the misrepresentations were material.

One would have expected that application of this well recognized Pennsylvania law to the undisputed facts would have required a declaration that the policy was void *ab initio.* However, the district court noted that in Pennsylvania this law typically had been applied in the context of misrepresentations about the state of one's medical condition or health background and had never been applied in the context of a misrepresentation about smoking habits. The additional question was posed, therefore, whether under Pennsylvania law a material misrepresentation in the smoking context called for the severe remedy of voiding the policy or whether some lesser remedy would be appropriate.

The district court distinguished between *medical condition or health background* misrepresentations (where voiding the policy would be required) and smoking practices misrepresentations. In the former case, according to the district court, the consequences of the misrepresentations are conjectural because one could not know with any assurance at what rate (if any) insurance would have issued had the proper information been supplied. In the smoking misrepresentation situation, on the other hand, one can simply refer to the insurance carrier's underwriting book to determine with precision the premium which would be charged had the proper information been supplied.

Based upon perceived equitable considerations and upon the distinction between health and smoking misrepresentations, the district court reached its determination that Pennsylvania courts would not apply the void *ab initio* rule in the smoking context.

We do not believe that these reasons support the district court's prediction of Pennsylvania law.

The distinction between the two categories of misrepresentations is not clear cut. Mr. Johnson called an expert witness to testify—David T. Warner. Before his retirement in 1989 Mr. Warner had been vice president of underwriting of Provident Mutual Life Insurance Company and had had 34 years of actuarial work. He testified that life insurance companies develop and maintain bulky underwriting manuals in which all the various risks and corresponding premium rates are set forth.

Mr. Warner confirmed that life insurance companies typically maintain in their underwriting manuals tables from which it can be ascertained with precision what premium will be charged for smokers and what premium will be charged for non-smokers. But he also testified that with respect to many medical and health background conditions the underwriting manuals contain tables from which it can be ascertained with equal precision what premium will be charged for persons having a particular medical problem or previous health episode. For example, Mr. Warner testified that if a person had a particular heart impairment, "[w]e would develop as much as we could of the medical history, and then try to fit them into a category where we had in our underwriters manual ratings that would be charged for various heart impairments." (App. A–56).

It is true that certain medical conditions would preclude obtaining a life insurance policy at any rate. However, it is also true that in many circumstances medical or health background misrepresentations have exactly the same characteristics as smoking practices misrepresentations. In each case it is possible to refer to the underwriters manual and ascertain what premium rate would have been charged if the true facts had been disclosed.

The logic of the district court's opinion would require abrogating the void *ab initio* rule not just in smoking misrepresentation cases but in all misrepresentation cases where, if the true facts were known, the insurance company would have issued a policy at a higher precisely ascertainable rate.

There is no suggestion in Pennsylvania law that there is either a smoking misrepresentation exception or a broader precisely ascertainable rate exception to the void *ab initio* rule. The relevant inquiry is whether the misrepresentation is material. Although not decided in the smoking context, Pennsylvania cases uniformly hold that a policy will be void *ab initio* if issued as a result of a misrepresentation whether the truth would have resulted in no policy being issued or whether the truth would have resulted in the policy being issued with a higher premium.

In *Hartman v. Keystone Insurance Co.*, 21 Pa. 466 (1853), the Pennsylvania Supreme Court stated, in declaring a policy void, that "[e]very fact is material which increases the risk, or which, if disclosed, would have been a fair reason for demanding a higher premium." *Id.* at 477. "The law undoubtedly is, that a policy ... will be vitiated by the misrepresentation of any fact which would increase the risk merely.... [A]nything which increases the risk cannot be immaterial." *Id.; accord McCaffrey v. Knights & Ladies of Columbia*, 213 Pa. 609, 612, 63 A. 189, 189 (1906) (pregnancy not material to risk because facts showed that insurer must have anticipated that possibility and yet did not demand higher premium: "A fact is material to the risk when, if known to the underwriter, it would have caused him to refuse the risk, or would have been a reason for his demanding a higher premium." (citing *Hartman*)). The Pennsylvania Supreme Court followed *Hartman* in *De Bellis v. United Benefit Life Insurance Co.*, 372 Pa. 207, 93 A.2d 429 (1953), where an insured had misrepresented his occupation in an application for life insurance. The court held that the insurer was entitled to judgment as a matter of law: "[a] statement concerning occupation of the insured is material to the risk if the real occupation of the applicant would expose his life to greater danger than the occupation he stated."

*Id.* at 212, 93 A.2d at 431 (citing *Hartman* ).

The Pennsylvania Superior Court's recent decision in *A.G. Allebach, Inc. v. Hurley,* 373 Pa.Super. 41, 540 A.2d 289 (1988), further illustrates the Pennsylvania courts' emphasis on whether the misrepresentation affected the premium rate. In that case the insurer had rescinded a claims-made errors and omissions policy because the insured had failed to disclose in his application for insurance the existence of an impending lawsuit. The Superior Court held that the misrepresentation was material and that the insurer was thus entitled to rescind the contract:

> There is no question from the record that the representations made by Hurley concerning the existence of claims against him would naturally influence the judgment of an insurer in issuing a claims made policy.... *The possibility that a claim could be made within the policy period would have at the least placed restrictions on Hurley's policy, or increased his premium.*

*Id.* at 52–53, 540 A.2d at 295 (emphasis added).

Thus, in *Allebach* the court held that rescission was required even though, had it known the truth, the insurer would have issued the policy with limitations or a higher premium.

The Pennsylvania legislature has created one exception to the common law rule. With respect to misrepresentations about age, the statute requires that policies provide that, upon discovery of the misrepresentation, the amount payable "shall be such as the premium would have purchased at the correct age or ages." Pa.Stat.Ann. Tit. 40, § 510(e) (Purdon 1971). There are special circumstances applicable to age representations. For example, some persons, particularly among recent immigrants, may not have accurate information about their dates of birth. There are no similar circumstances which would justify removing smoking representations from the general class of representations. It is significant that the Pennsylvania legislature has spoken when it wished to accord special treatment to a particular category of representations.

Although Pennsylvania courts have not had occasion to apply the void *ab initio* rule in the smoking misrepresentation context, other courts have addressed the very issue presented in this case. Applying rescission standards similar to Pennsylvania's, these courts have uniformly voided policies for misrepresentations of smoking habits.

In *Mutual Benefits Life Insurance Co. v. JMR Electronics Corp.,* 848 F.2d 30 (2d Cir.1988) (*per curiam* ), the court addressed the same smoking misrepresentation issues and the same arguments as are presented here. Affirming the district court's order of rescission the Second Circuit stated:

> That [the insurer] might not have refused the risk on *any* terms had it known the undisclosed facts is irrelevant. Most risks are insurable at some price. The purpose of the materiality inquiry is not to permit the jury to rewrite the terms of the insurance agreement to conform to the newly disclosed facts but to make certain that the risk insured was the risk covered by the policy agreed upon. If a fact is material to the risk, the insurer may avoid liability under a policy if that fact was misrepresented in an application for that policy whether or not the parties might have agreed to some other contractual arrangement had the critical fact been disclosed.

*Id.* at 34. The New York courts have confirmed the *JMR* court's interpretation of New York law. *See North Atl. Life Ins. Co. v. Rothman,* 151 A.D.2d 731, 542 N.Y. S.2d 795, 796 (1989) (citing *JMR* with approval in holding that misrepresentation of smoking habits voided policy).

Courts of other jurisdictions have reached the same result in smoking misrepresentation cases. *Parker v. Prudential Insurance Co. of America,* 900 F.2d 772 (4th Cir.1990); *Swift v. North American Co. for Life & Health Insurance,* 677 F.Supp. 1145 (S.D.Fla.1987), *aff'd mem.,* 838 F.2d 1220 (11th Cir.1988); *Ives v. INA Life Ins. Co.,* 101 Or.App. 429, 790 P.2d

1206 (1990). Thus the Courts of Appeals for the Second and Fourth Circuits, the District for the Southern District of Florida, and the courts of New York and Oregon have held that a misrepresentation as to smoking habits in an application for insurance relieves the insurer of liability on the policy. There is every reason to conclude that the same result would prevail in Pennsylvania if and when the question is presented.

While a court might sympathize with a beneficiary who does not receive the proceeds of a policy obtained by the insured's fraud, there are strong reasons of public policy supporting the rule which we believe prevails in Pennsylvania. If the only consequence of a fraudulent misrepresentation in a life insurance application is to reduce the amount paid under the policy, there is every incentive for applicants to lie. If the lie is undetected during the two year contestability period, the insured will have obtained excessive coverage for which he has not paid. If the lie is detected during the two year period, the insured will still obtain what he could have had if he had told the truth. In essence, the applicant has everything to gain and nothing to lose by lying. The victims will be the honest applicants who tell the truth and whose premiums will rise over the long run to pay for the excessive insurance proceeds paid out as a result of undetected misrepresentations in fraudulent applications.

### III.

Thus, it is well settled under Pennsylvania law that a life insurance policy obtained by means of a fraudulent misrepresentation in the application is void *ab initio*. There is nothing to suggest that Pennsylvania courts would, rejecting all precedent in other jurisdictions, apply a different rule of law to an applicant's misrepresentation concerning his or her smoking practices. There are sound reasons of public policy for the rule.

Therefore, we conclude that the district court erred in predicting what a Pennsylvania court would do when presented with the circumstances of this case. The judgment of the district court will be reversed and the case remanded for entry of a judgment declaring that the policy in question was void *ab initio*.