585 A.2d 53

**George E. KEARNS, Jr., Appellant,**

**v.**

**PHILADELPHIA LIFE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1990.

Filed Jan. 17, 1991.

Thomas A. Leonard, Philadelphia, for appellant.

Deborah J. Krabbendam, Philadelphia, for appellee.

Before MONTEMURO, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

Appellant, George E. Kearns, Jr., appeals from the May 24, 1990 en banc Order granting appellee/Philadelphia Life Insurance Company's (hereinafter PLI) motion for judgment notwithstanding the verdict, thereby disallowing appellant payment on two $100,000 life insurance policies issued by appellee on appellant's wife.

In August, 1980, appellant's wife, Wilhelmina, underwent a hysterectomy for an ovarian cyst which was later ascertained to be malignant.[1] As physicians had advised appellant the encapsulated malignant cells had been fully excised, appellant and his daughter asked that his wife, a 53–year old woman who had lost a grandfather and both parents to cancer, not be informed of the carcinoma. In December, 1981, the appellant, an attorney for 30 odd years, through an independent insurance agent and business associate of his, applied to PLI for a $100,000 insurance policy on the life of Wilhelmina. This policy, and a second policy, also for $100,000, were issued on February 16, 1982 and March 22, 1982, respectively. In May, 1982, Wilhelmina was diagnosed as having lung cancer and died in December of that same year. Appellee denied appellant's claim for the insurance proceeds, averring the Kearns

---

1. The pathology reports identified the growth as a papillary serus cyst adenocarcinoma of the right ovary.

failed to disclose, in the course of procuring the policies, that the deceased insured's past medical history included a diagnosis of ovarian cancer. Appellant then brought suit to recover on both policies and received a jury verdict. However, the court granted appellee's motion for judgment notwithstanding the jury verdict and appellant is now before this Court appealing the Order granting same.

Appellant alleges three errors by the trial court: 1) the en banc court relied upon an erroneous legal standard in granting the motion for judgment n.o.v.; 2) the court improperly imputed and bound the appellant to Wilhelmina's incorrect representations, or lack thereof, on the insurance application regarding the 1980 ovarian cancer diagnosis; and 3) there was insufficient evidence to support judgment n.o.v.

The grant of a judgment notwithstanding the verdict may only be entered in a clear case where the facts are such that no two reasonable persons could fail to agree that the verdict is improper, and should not be entered in cases where evidence is conflicting upon material fact. *Northwest Savings Assoc. v. Distler*, 354 Pa.Super. 187, 511 A.2d 824 (1986). On appeal from an Order of a trial court granting judgment n.o.v., this Court is required to consider the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Lowry v. State Farm Insurance Companies*, 392 Pa.Super. 77, 572 A.2d 700 (1990).

The crux of the appellee's defense in denying payment on the policies was the appellant's intentional misrepresentation of his wife's state of health on the applications for the insurance policies. Appellee argued the appellant knew of his wife's 1980 bout with ovarian cancer yet purposefully withheld this material fact from the appellee. The trial court found, with regard to the first insurance policy, that the appellant completed pages one and two, indicating the insured, the beneficiary and the insured's health statement, and then signed the forms guaranteeing

their veracity and gave the blank medical exam form to his wife to be completed later in conjunction with the exam. After the exam, Wilhelmina returned the completed form to her husband who passed it on to the agent who forwarded it to PLI. The fact that appellant signed a blank form does not relieve him of responsibility for the accuracy of the averments contained therein. *See Indovina v. Metropolitan Life Ins. Co.,* 334 Pa. 167, 5 A.2d 556 (1939).

■ As is the course in the insurance business, appellee relied on answers on Wilhelmina's exam form in deciding whether it would be financially prudent to issue the life insurance policy at the premium rates and terms sought. Despite the form's specific request "Have you ever been treated for or ever had any known indication of ... [d]isorder of skin, lymph glands, cyst, tumor, or cancer?", the query was answered by the Kearns in the negative and there was no allusion whatsoever to the ovarian cancer.

The second policy was procured shortly thereafter, in much the same manner, and required no physical. An investigator did, however, contact the Kearns in accord with PLI's practice to investigate the personal circumstances of a proposed insured. As Wilhelmina was out of the country, the appellant responded to the investigator's questions. Contemporaneous with his conversation with the appellant, the investigator prepared a report which stated in relevant part:

HEALTH: She enjoys good health. She is not handicapped. She has not been sick or ill. No history of serious health problems. She did have a hysterectomy 1½ years ago, under staff physician, at Mercy Catholic Medical Center, Mercy Fitzgerald Division, Lansdowne Ave., Darby, PA., and made a normal recovery.

(Appellee's trial exhibit 5.) On the basis of these representations and those made on the first policy application, PLI issued a second $100,000 life insurance policy.

Evidence of record, primarily the testimony of the appellant, indicates there is no conflicting evidence with regard

to material facts. Appellant repeatedly admits he was aware of his wife's ovarian cancer yet signed the policy application denying any previous cancer diagnosis. Appellant's argument there was no fraudulent misrepresentation as his wife had no knowledge of the ovarian cancer does not withstand judicial scrutiny in that he was very much aware of the cancer diagnosis. The Court of Common Pleas, sitting en banc, cited our Supreme Court when it stated:

> The rule governing cases of this sort was set forth in *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 555, 186 A.2d [A.] 133 (1936) [and reiterated many times since]: "where it affirmatively appears, from sufficient documentary evidence, that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of the insured, as where false answers are shown to have been given by insured *under such circumstances that [s]he must have been aware of their falsity*, the court may direct a verdict or enter judgment for the insurer." (emphasis in the original). Also stated in *Evans*, supra, 558–559: "... where the uncontradicted testimony of a party's own witness[es] establish facts essential to his opponent's case ... facts thereby established are to be taken as true, and, if sufficient to avoid the policy, they may warrant the entry of judgment for the insurer."

(Slip Op., Goldman, Goodheart, Hill, JJ., 5/23/90, p. 9) (en banc), citing *Kizirian v. United Benefit Life Ins. Co.*, 383 Pa. 515, 119 A.2d 47 (1956). The court also cited the following statutory insurance law in support of its finding that the reasoning of *Evans* and Pennsylvania statutory law supports the view that the law of fraudulent misrepresentation focuses on how the policies were obtained and applies to statements made or conduct undertaken on behalf of the insured, as well as to the insured's conduct.

> 40 P.S. § 511a ("Effect of medical examination and waiver thereof") provides, in relevant part, that after a legitimate medical examination, "[insurer] is estopped from setting up in defense ... that the insured was not in the

condition of health required by the policy ... *unless the same was procured by or through the fraud, deceit, or misrepresentation, on or on behalf of the insured*". (Emphasis added).

(Slip Op. at 10.) The certification clauses on the policy application forms, signed by the appellant/beneficiary, represented to PLI all statements made therein were true and complete to the best of his knowledge. The record is replete with instances wherein the appellant admits he knew the insured suffered from ovarian cancer prior to applying for the insurance yet knowingly signed the application denying same. The appellant also verbally misrepresented the facts concerning insured's health when he spoke to PLI's investigator. Appellant tries to mitigate the impact of his deception with regard to the hysterectomy and accompanying cancer by saying had he been asked point blank "has your wife ever had cancer?", he would have answered in the affirmative. Such semantic evasiveness, not unlike that of a child wishing to escape punishment for a falsehood because he was not specifically confronted, will not be tolerated by this Court. Appellant admitted he had exclusive possession of material knowledge concerning the health history of the proposed insured and made no effort whatsoever to disclose it to PLI in the course of procuring the policies. Wilhelmina's ignorance of the ovarian cancer does not justify appellant's bad faith conduct in this matter. Allowing appellant the benefit of every possibly doubtful inference, it nonetheless remains perfectly clear that "[material] falsity and the requisite bad faith affirmatively appear from the uncontradicted testimony of plaintiff's own case." (Slip Op. at 22, citing *Prevete v. Metroplitan Life Insurance Co.*, 343 Pa. 365, 22 A.2d 691 (1941).)

On the basis of the aforesaid discussion, appellant's arguments that the record lacked sufficient evidence to support a judgment n.o.v. and that he was improperly held responsible for the confidential representations of his wife on the policy application are without merit. Nor does appellant's

argument speak well for him, the person who became the de facto beneficiary of his own fraudulent conduct.

■ Finally appellant contends the court relied upon an erroneous legal standard in support of its entry of judgment n.o.v. Specifically, appellant argues the court failed to analyze PLI's fraudulent misrepresentation defense under the "clear and convincing" or "clear, precise and indubitable" evidentiary standard, and in support of its allegation, cites the court's Opinion wherein it summarized the appellee's burden of proving fraud as being by "clear and satisfactory." (Slip Op. at 11.) This last argument is equally without merit.

The court was well aware of the heavy burden PLI had to meet in order to prevail on its defense of fraudulent misrepresentation and instructed the jury accordingly (T.T., 7/28/89, p. 73). The fact that the court chose to cite a Supreme Court case wherein the exact phrase "clear and convincing" was not uttered is not proof positive the court failed to employ the appropriate standard in its analysis. The appellant's argument is merely one of semantics. There is no evidence in the thoroughly reasoned Opinion that the court departed from the clear and convincing standard to the less stringent preponderance standard in arriving at its decision to grant judgment n.o.v. Additionally, it must be noted that in order for the court to have properly granted judgment n.o.v., PLI must have established its defense of fraudulent misrepresentation by an even more stringent standard, that being by facts and law upon which "no two reasonable persons could fail to agree that the verdict was improper." *Northwest Savings, supra.*

In light of the foregoing discussion, we find the court properly entered judgment n.o.v. in favor of PLI.

Judgment affirmed.