The **AMERICAN FRANKLIN LIFE INSURANCE COMPANY, Plaintiff–Counterclaim Defendant,**

v.

**Ronald L. GALATI, Defendant, Counterclaim and Third–Party Plaintiff,**

v.

**Thomas A. CETOLA, Jr., Third–Party Defendant.**

Civ. No. 91–2786.

United States District Court, E.D. Pennsylvania.

Oct. 29, 1991.

Stephen S. Phillips, James M. Beck, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff-counterclaim defendant.

Stuart D. Fiel, Philadelphia, Pa., for defendants.

MEMORANDUM

LOUIS H. POLLAK, District Judge.

This action arises out of a contract for disability income insurance between plaintiff American Franklin Life Insurance Company ("American Franklin") and defendant Ronald L. Galati. American Franklin seeks a declaratory judgment declaring that it has the right to rescind the policy for which Galati contracted, a policy that American Franklin claims it entered on the basis of material false statements by Galati. American Franklin also seeks restitution of the approximately $43,000 that it has paid to Galati in the form of benefits under the policy. Galati has filed a counterclaim against American Franklin and a third-party claim against Thomas A. Cetola, an agent affiliated with American Franklin, charging them with bad faith. American Franklin has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Galati opposes that motion; in addition, he has filed a counter-motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons given below, I will grant American Franklin's motion and deny Galati's counter-motion.

## I. Facts

For the purpose of a motion for judgment on the pleadings pursuant to Rule 12(c), the court must interpret the facts alleged in the pleadings and the inferences that can be drawn therefrom in the light most favorable to the non-moving party. The court is thus required to take as true the factual allegations of the non-movant's pleading, and to treat as false any contradictory allegations in the moving party's pleading. *See Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1058–59 (3rd Cir. 1981); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* 519–20 (2d ed. 1990). The court need not accept the non-movant's conclusions of law, however. 5A Wright & Miller, *supra*, at 523. In accordance with this standard, the following facts are drawn from the pleadings.[1]

Prior to August 1989, defendant Ronald Galati had a policy for disability income insurance with the John Hancock Insurance Company. In August 1989, however, third-party defendant Thomas A. Cetola, Jr., a former agent of the John Hancock Insurance Company who had recently become affiliated with plaintiff American Franklin, persuaded Galati to discontinue his existing policy and to apply for a new policy with American Franklin. On or about August 18, 1989, Galati signed an application for a disability income insurance policy with American Franklin, seeking a policy that would provide a monthly benefit of $4,000 until Galati reached the age of 65. The answers to all questions contained in the application were placed on the form not by Galati himself, but rather by Cetola.

The application averred that Galati was the president and owner of Ron's Auto Body, a Philadelphia automobile repair business. It stated that his duties were supervisory and managerial, that his annual earned income for 1989 would be $130,000, and that his annual earned income for 1988 had been $125,000. The application also contained the following questions about Galati's medical history:

22.

(a) Have you within the past 5 years: consulted a physician or other medical practitioner; been advised to have medical treatment or surgery; been hospitalized; been diagnosed or treated by a physician for any disorder of the blood or immune system including AIDS; requested, received or been refused insurance benefits for any injury or sickness? Are you now pregnant?

\* \* \* \* \* \*

(d) Have you ever had any known indication of or been treated for:

\* \* \* \* \* \*

---

1. Exhibits to pleadings form part of the pleadings for the purposes of Rule 12(c), as for all other purposes. *See* Fed.R.Civ.P. 10(c).

(2) Diabetes, cancer or tumor, venereal disease; mental or nervous disorders, epilepsy; disease or disorder of the nervous system, skin, glands, or muscles or bones including spine, back or joints?

(e) Do you have any physical impairments or deformities? Have you used illegal drugs? Have you been arrested, been diagnosed or received treatment for drug or alcohol abuse? Have you used prescription drugs in the last five years?

Complaint, Exhibit A. All these questions were answered, "No."

After receiving Galati's application, American Franklin issued the policy that Galati sought on November 1, 1989. A few months later, an application for benefits bearing Galati's undated signature was submitted.[2] The application asserted that Galati suffered from a chipped right elbow that left him unable to do his job. Whereas Galati's initial application had described his duties as supervisory and managerial, the application for benefits stated that Galati's duties included metal and paint work, tasks that his injury prevented him from performing. Pursuant to the policy, American Franklin began payment of a benefit of $4,000 per month.

In the process of investigating Galati's claim for benefits, American Franklin requested copies of Galati's federal income tax returns for 1989 and 1988, which were provided by Galati's accountant. The return for 1989 reported business income of $51,000, as well as nominal interest income. *See* Complaint, exhibit H. The total income reported on the 1989 return was nearly $80,000 less than the income amount stated on Galati's application for insurance. The return for 1988 reported business income of $44,131, and no additional income. *See* Complaint, Exhibit G. This reported income was nearly $81,000 less than the amount reported on Galati's application.

By August 1990, American Franklin possessed information, including information provided by Galati during a telephone interview, that supported the conclusion that Galati's application contained false statements concerning his income and job duties. American Franklin therefore proposed, and Galati accepted, a reduction in the monthly benefit that Galati would receive, from $4,000 to $2,900. This reduction reflected the benefit to which Galati would be entitled given his true annual income and job duties.

Continuing its investigation into Galati's claim, American Franklin discovered that Galati had an extensive medical history that had not been reported on his application. Specifically, Galati had been involved in traffic accidents in July 1982, August 1983, November 1987, and June 1988. After each accident, Galati filed a civil complaint, seeking to recover damages for physical injuries and medical expenses. The pleadings and medical reports obtained by American Franklin made the following facts clear:

(1) Galati had consulted physicians and received medical treatment on several occasions during the five years prior to August 18, 1989, the date on which he signed the application for insurance. Galati claimed past medical expenses in his verified complaints concerning his November 1987 accident. *See* Complaint ¶ 61; Answer ¶ 61. In addition, Galati received treatment from a physician for the injuries incurred in the June 1988 accident through at least February 1989. *See* Complaint ¶ 71; Answer ¶ 71. The answer to that part of question 22(a) that inquired whether Galati had consulted or been treated by a physician or other medical practitioner was therefore incorrect.[3]

---

**2.** Galati contends that he did not submit the application for benefits, but that "the said Application for Benefits was prepared and submitted by an individual other than Galati." Answer ¶ 31. The intended legal implication of this recital is unclear. Galati asserts that he was, in fact, disabled as described in the application for benefits, he does not deny knowledge of the application, and, given the terms of his counterclaim, he evidently wishes to continue receiving the benefits sought in the application.

**3.** Galati admits that the answer on the application was incorrect. *See* Complaint ¶¶ 91–92; Answer ¶¶ 91–92.

(2) Galati had sought insurance benefits for injuries received in the November 1987 and June 1988 accidents. *See* Complaint ¶¶ 58, 65, 93; Answer ¶¶ 58, 65, 93. The answer to the part of question 22(a) dealing with prior claims for insurance benefits was therefore incorrect.[4]

(3) Galati had a history of mental or nervous disorders and disorders of the nervous system. Specifically, in his complaint arising from the July 1982 accident, Galati claimed that the accident had caused him to suffer "severe post-traumatic headaches; severe post-traumatic acute stress disorder, characterized by anxiety, phobia and depression; [and] severe damage to his nerves and nervous system." Complaint, Exhibit I ¶ 11(a). Galati required treatment with a transcutaneous electrical nerve stimulator on August 11, 1982.[5] *See* Complaint ¶ 47; Answer ¶ 47. Galati also had a history of disorders of the spine, which required extensive treatment. *See* Complaint ¶¶ 45, 46, 48, 55, 58; Answer ¶¶ 45, 46, 48, 55, 58. The answer to question 22(d)(2) on Galati's application for insurance, which asked whether Galati had been treated for, *inter alia*, any disease or disorder of the nervous system, spine, back, or joints, was therefore incorrect.[6]

(4) Galati suffered, or claimed to have suffered, permanent physical impairments and deformities. In two of Galati's actions arising from traffic accidents, Galati claimed to have suffered "serious and permanent" injuries. Complaint, Exhibits N and O. Galati was diagnosed in August 1983 as suffering from spondylolysis, a condition involving stiffening or dissolution of the vertebral joints. *See* Complaint ¶ 48(c); Answer ¶ 48; Complaint, Exhibit

K. On June 14, 1988, Paul J. Sedacca, M.D., wrote that Galati's prognosis for full recovery

> must be listed as guarded because of the nature and severity of the patient's original injuries, especially those to his left knee. Since the left knee is an area of major weight bearing forces, it does remain my professional opinion that there is a good chance that Mr. Galati may experience some degree of pain as well as impairment on a permanent basis.

Complaint, Exhibit O. The answer to question 22(e) on Galati's application for insurance, which inquired, *inter alia*, whether Galati had suffered any physical impairments or deformities, was therefore incorrect.[7]

Upon discovering the inaccuracies in Galati's application, American Franklin offered Galati a lump-sum payment of $15,000 in lieu of future benefits payments. When Galati refused to accept the lump sum, American Franklin instituted the present action.

## II. Jurisdiction

Because subject matter of this action is based on diversity of citizenship, it is necessary for American Franklin to allege an amount in controversy in excess of $50,000. *See* 28 U.S.C. § 1332(a). Galati notes that American Franklin's complaint seeks restitution of $43,160.11, the amount of benefits previously paid to Galati under the policy. He argues, therefore, that American Franklin has failed to allege the jurisdictional amount, and that this court lacks jurisdiction over American Franklin's claim.

American Franklin counters that it seeks more than simply restitution of the

---

4. Galati admits that the answer on the application was incorrect. *See* Complaint ¶ 93; Answer ¶ 93.

5. Galati, in his answer, notes that the treatment was received more than five years before the date on which he signed the application for insurance. Unlike question 22(a), however, question 22(d)(2) calls for an answer that is not restricted to the five years prior to the signing of the application. The fact that, by the time of Galati's application, approximately seven years had passed since Galati received treatment for a disorder of the nervous system, as described in

paragraph 47 of the complaint, is irrelevant. Galati was obligated under the terms of the application to disclose that he had, in fact, received such treatment, and the application as submitted failed to make this disclosure.

6. Galati admits that the answer on the application was incorrect. *See* Complaint ¶¶ 94–96; Answer ¶¶ 94–96.

7. Galati admits that the answer on the application was incorrect. *See* Complaint ¶ 97; Answer ¶ 97.

benefits already paid. In addition, it seeks a declaration that the policy is null and void *ab initio.* In such circumstances, it argues, the court, for the purpose of determining whether the complaint alleges the jurisdictional amount, must consider not only past benefits paid but also future benefits that might be paid. Under this measure, American Franklin contends, the complaint alleges an amount in controversy of over $50,000.

The position propounded by American Franklin represents the majority view. *See* Joseph E. Edwards, Annotation, *Determination of Requisite Amount in Controversy in Diversity Action in Federal District Court Involving Liability Under, or Validity of, Disability Insurance,* 76 A.L.R.Fed. 120, 128 (1972).[8] Moreover, it clearly represents the better view. When an action is brought to rescind an insurance contract, at issue is not merely the insured's right to benefits already received or claimed to be owed, but rather the insured's right to coverage and benefits under any circumstances. The value of that right, for the purpose of determining the amount in controversy, cannot be restricted to the value of benefits accrued in the past.

In the present case, it appears from the pleadings that American Franklin paid benefits totalling $43,160.11 prior to the filing of the complaint on May 1, 1991. Under the majority rule, however, American Franklin's claim is not limited to that amount. Rather, Galati claims that benefits continue to accrue beyond the date of the complaint. Because the validity of the entire policy is at issue, those amounts can and should be included in the jurisdictional amount. Even without peering into the uncertain future, it is evident that American Franklin has properly alleged an amount in controversy of over $50,000. According to Galati's counterclaim, Galati is owed, to date, six months of unpaid benefits at a rate of $2,900 per month, for a total of $17,400. It is therefore clear,

even without resort to actuarial tables, that the sum of past benefits and future benefits under the policy being challenged exceeds $50,000. I conclude that this court has jurisdiction to hear American Franklin's complaint.

### III. American Franklin's Right to Rescind

■ Under long-established Pennsylvania law, an insurer may rescind an insurance policy if the insurer can establish that: (1) the application contained a representation that was false; (2) the false representation was material to the risk being insured; and (3) the insured knew when making the representation that the representation was false, or made the representation in bad faith. *See, e.g., New York Life Ins. Co. v. Johnson,* 923 F.2d 279, 281 (3rd Cir.1991); *Shafer v. John Hancock Mut. Life Ins. Co.,* 410 Pa. 394, 398, 189 A.2d 234, 236 (1963); *A.G. Allebach, Inc. v. Hurley,* 373 Pa.Super. 41, 52, 540 A.2d 289, 294 (1988). For the purposes of this motion, I must determine whether the allegations of the pleadings establish these elements, treating the allegations of Galati's answer as true and any contradictory allegations of American Franklin's complaint as false. *See Society Hill Civic Ass'n,* 632 F.2d at 1058–59.

### 1. False Representation

■ Galati admits in his answer to the complaint that his application contained answers to questions about his medical record that were incorrect. *See* Answer ¶¶ 91–97. Galati also admits that the annual income set forth in his insurance application, an amount on which Galati's maximum benefit would be based, was substantially larger than the amounts of income that Galati reported on his tax returns for the corresponding years. *See* Complaint, Exhibit A; Complaint ¶¶ 37–38; Answer ¶¶ 37–38. Finally, Galati admits that his job entailed more than management and supervision,

**8.** There appears to be no reported case in our Court of Appeals, or in any district court within the Third Circuit, that directly addresses this issue. One court did, however, implicitly recognize the majority rule. *See Bree v. Mutual Bene-* *fit Health and Accident Assoc.,* 182 F.Supp. 181, 183 (E.D.Pa.1959) (stating that the court may not consider possible future benefits as part of the amount in controversy where "the validity or the vitality of the policies is not in issue").

and that the description of his job duties in the application was therefore inaccurate. *See* Complaint ¶ 15; Answer ¶ 15. As a matter of law, the first prong of the test has been met: American Franklin has established, from the pleadings, that Galati's application for insurance contained false statements.

## 2. *Materiality*

Information on an insurance application is material if knowledge or ignorance of it would influence the decision of the issuing insurer to issue the policy, or the ability of the insurer to evaluate the degree and character of risk, or the determination of the appropriate premium rate. *See Johnson*, 923 F.2d at 281; *Hurley*, 373 Pa.Super. at 52, 540 A.2d at 295. According to this standard, the misstatements on Galati's application, relating to his medical history, his income level, and his job duties, are material as a matter of law to the determination of whether and at what rate to issue Galati a disability income insurance policy.[9]

## 3. *Galati's Knowledge or Bad Faith*

■ The mere fact that Galati's application contained material misstatements, however, is not sufficient to entitle American Franklin to the relief it seeks. The law does not allow an insurer to rescind an insurance policy because of innocent mistakes by the insured, even if those mistakes involved misrepresentations of material facts. Instead, to succeed on its present motion, American Franklin must show, based solely on the pleadings, that Galati knowingly made the false statements or made the statements in bad faith. *See Johnson*, 923 F.2d at 281; *Hurley*, 373 Pa.Super. at 52, 540 A.2d at 294.

Galati argues that, under the facts alleged in the pleadings, rescission would be inappropriate. He asserts that, although the application admittedly contained false statements, he himself did not make those statements. Rather, he contends, all questions on the application were answered by Cetola, the agent who sold Galati the policy, without Galati's knowledge or approval.[10]

Galati's averment that Cetola in fact made the misstatements contained in the application is insufficient to allow Galati to avoid responsibility for the misstatements. The application signed by Galati contains a printed representation that Galati himself read both the questions and the answers contained in the completed application, and that the answers given were, to the best of his knowledge, true and complete. The application also states: "No agent, broker, or medical examiner has authority to waive the answers to any question, to determine insurability, to waive any of the Company's rights or requirements, or to make or alter any contract or policy." Complaint, Exhibit A. The effect of this statement is to inform the applicant that no action by the agent can excuse the applicant from responsibility for meeting the insurer's requirements. By subscribing to these statements, Galati affirmed that he had read them and understood them. Even if that was not, in fact, the case, Galati remains bound by his representation.

Galati has admitted that the application bearing his signature contains misrepresentations. Given this admission, Galati cannot, under Pennsylvania law, avoid responsibility for the misstatements appearing above his signature. If Galati did review the answers on the application, as is explicitly required by the application, then he must have realized that the application con-

9. It is not necessary that the alleged misrepresentation be related to the claimed disability for which benefits are sought. A statement is material if it is relevant to the risk assumed, even if it is unrelated to the loss actually incurred. *See Woods v. National Life and Accident Ins. Co.*, 380 F.2d 843, 848 n. 12 (3rd Cir.1967); *Shafer*, 410 Pa. at 400, 189 A.2d at 237.

10. To underscore this point, Galati notes that the application purports to have been signed in Wilmington, Delaware. Galati asserts that, in fact, he signed the application in Philadelphia. Galati appears to rely heavily on this to support his contention that Cetola, not he, completed the application. As will be explained, however, the fact that Galati himself did not complete the application does not absolve him of responsibility for the statements contained therein.

tained false statements. Galati must have known that his job duties entailed physical labor in addition to management and supervision. Moreover, Galati's medical history over the five years prior to the application, as described in the pleadings, was sufficiently extensive that Galati could not have innocently overlooked or forgotten about the treatment he had received. *See Monarch Life Ins. Co. v. Donahue,* 708 F.Supp. 674, 676 (E.D.Pa.1989). Bad faith may therefore be inferred as a matter of law. *See Grimes v. Prudential Ins. Co.,* 401 Pa.Super. 245, 249, 585 A.2d 29, 31 (1991). The fact that Galati did not himself physically complete the application is immaterial; the statements may be imputed to Galati through the signed affirmation that Galati had read and attested to the truth of the contents of the application. As a matter of law, if Galati reviewed the application, he made false statements with knowledge of their falsity.

■ On the other hand, if Galati did not review the application, but rather relied on Cetola to provide appropriate answers, then Galati's act of signing the application constituted bad faith. *See, e.g., Donahue,* 708 F.Supp. at 676; *Van Riper v. Equitable Life Assurance Soc'y,* 561 F.Supp. 26, 33 (E.D.Pa.1982), *aff'd,* 707 F.2d 1397 (3rd Cir. 1983); *Prevete v. Metropolitan Life Ins. Co.,* 343 Pa. 365, 369, 22 A.2d 691, 693 (1941). Where an application includes an affirmation that the applicant has read and attests to the accuracy of the contents of the application, the applicant may not avoid the responsibility imposed by the application by signing a blank form and leaving it to another to fill in the appropriate responses. *See Kearns v. Philadelphia Life Ins. Co.,* 401 Pa.Super. 292, 296, 585 A.2d 53, 54 (1991). Even if Galati provided appropriate answers to questions posed by Cetola, who then completed the form, Galati's subsequent failure to review the answers that Cetola actually placed on the application, in order to correct what Galati now acknowledges to be errors contained therein, constituted bad faith. *See Donahue,* 708 F.Supp. at 676. Under such circumstances, Pennsylvania law is clear that American Franklin had the right to rescind.

## IV. Galati's Affirmative Defense: Novation

■ Galati argues that, even if the initial application contained false statements that were material to the initial decision to issue the policy, the fact that American Franklin continued to make benefits payments, albeit at a reduced rate, when it learned of Galati's true medical history, income, and job duties indicates that the parties had entered into a novation. Therefore, Galati contends, under the terms of the novation, American Franklin remains obligated to continue to pay benefits at a rate of $2,900, regardless of any misstatements that may have been made prior to the novation.

Galati's argument is without merit. The Pennsylvania Supreme Court has set forth the requirements for a novation as follows: "the displacement and extinction of a valid contract, the substitution for it of a valid new contract, either between the same parties or by the introduction of a new creditor or debtor, a sufficient legal consideration for the new contract, and the consent of the parties." *Yoder v. T.F. Scholes, Inc.,* 404 Pa. 242, 245, 173 A.2d 120, 122–23 (1961). It is plain that in the present case there was no initial valid contract to be extinguished; therefore, legally, a novation could not come into existence.

■ If Galati has an affirmative defense to American Franklin's claim, it must be that, by reducing Galati's benefits after discovering that Galati's application contained false statements, American Franklin waived its right to rescind the policy. This position, too, is unavailing. In paragraph 39 of its complaint, American Franklin alleges:

> On the basis of defendant's misrepresentations of his employment duties and his income, as confirmed by the information American had received from defendant himself, American reduced the monthly benefit it paid to defendant to $2,900, to reflect the maximum benefit for which defendant could have been eligible, given what he was reporting his income and occupation to be.

Complaint ¶ 39. Galati admits the substance of this paragraph, although he denies that he, himself, ever made any misrepresentations. *See* Answer ¶ 39. American Franklin further alleges that it did not learn of Galati's extensive medical history until after it had agreed to reduce Galati's benefit. *See* Complaint ¶¶ 40–41. Galati does not appear to contest this chronology.

By agreeing to continue to pay benefits at a reduced rate after learning of Galati's true income and job duties, American Franklin waived its right to rescind the policy on the basis of misstatements concerning these topics on Galati's application. The fact that American Franklin waived its right to challenge these misstatements, however, does not mean that American Franklin waived its right to challenge all misstatements on the application. *See Franklin Life Ins. Co. v. Bieniek*, 312 F.2d 365, 375 (3rd Cir.1962). American Franklin cannot be deemed to have waived its right to rescind unless it can be shown to have relinquished that right voluntarily and intentionally, with full knowledge of all pertinent facts. *See Wasilko v. Home Mut. Casualty Co.*, 210 Pa.Super. 322, 327–28, 232 A.2d 60, 63 (1967). Galati has failed to plead the facts necessary to make this showing. Because it appears from the pleadings that American Franklin did not know that Galati's application had misrepresented his medical history at the time that it agreed to the reduction in benefits, I must conclude that American Franklin did not waive its right to rescind on the basis of those misstatements.

### V. Galati's Counterclaim and Third–Party Claim: Bad Faith

Galati has filed a counterclaim against American Franklin and a third-party claim against Cetola, charging them with failure to discharge their duty of good faith and fair dealing in the preparation of Galati's application for insurance, in the administration of Galati's claim under the policy, and in the attempt to persuade Galati to accept a lump-sum payment in lieu of further benefits. American Franklin and Cetola have moved for judgment on the pleadings on Galati's counterclaim and third-party claim.

■ American Franklin first notes, correctly, that there is no common law action for bad faith against an insurer in Pennsylvania. In *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), the Pennsylvania Supreme Court concluded that, by declining to include a private cause of action under the Unfair Insurance Practices Act (UIPA), 40 P.S. §§ 1171.1–1171.15 (Purdon's Supp.1991), the Pennsylvania legislature had determined that the serious problem of bad faith on the part of insurance carriers was to be addressed exclusively through the regulatory structure created by the UIPA. *See id.*, 494 Pa. at 507–08, 431 A.2d at 969–70. Because the UIPA applies to bad faith actions on the part of insurance agents as well as insurance carriers, *see* 40 P.S. § 1171.3, the rationale of *D'Ambrosio* bars a law suit for bad faith against Cetola as well as against American Franklin.

■ If *D'Ambrosio* were the last word on the issue, therefore, Galati would have no basis for relief in his counterclaim. Subsequent to *D'Ambrosio*, however, the Pennsylvania legislature enacted a statute creating a private cause of action for the bad faith conduct of insurers. That statute, 42 Pa.C.S.A. section 8371 (Purdon's Supp.1991), provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

Section 8371 took effect on July 1, 1990. *See Williams v. State Farm Mut. Auto. Ins. Co.*, 763 F.Supp. 121, 127 (E.D.Pa. 1991); *Layfield v. Zurich American Ins. Co.*, No. 90–5651, 1991 WL 5983, at *2, 1991 U.S. Dist. LEXIS 570, at *6 (E.D.Pa.

Jan. 16, 1991). Because section 8371 dramatically alters the extent of an insurance carrier's potential liability, and because the legislature did not explicitly provide that the section would apply retrospectively, the section has been uniformly held to be prospective in nature. *See Williams,* 763 F.Supp. at 127; *Liberty Mut. Ins. Co. v. Paper Mfg. Co.,* 753 F.Supp. 156, 158 (E.D.Pa.1990); *McAlister v. Sentry Ins. Co.,* No. 91–1701, 1991 WL 102973, at *10, 1991 U.S.Dist. LEXIS 7945, at *38 (E.D.Pa. June 10, 1991); *Bryant v. Liberty Mut. Ins. Co.,* No. 90–5637, 1990 WL 223126, at *4–*5, 1990 U.S.Dist. LEXIS 17410, at *12– *16 (E.D.Pa. Dec. 19, 1990). If Galati has an action against American Franklin and Cetola for bad faith, therefore, it may only arise out of actions taken by American Franklin and Cetola on or after the effective date of section 8371.

Galati alleges no conduct by Cetola that occurred on or after July 1, 1990. The third-party complaint against Cetola must therefore be dismissed.[11] Galati does, however, allege conduct by American Franklin that occurred after July 1, 1990. Specifically, Galati alleges that American Franklin acted in bad faith in investigating his claim, and in attempting to persuade Galati to accept a $15,000 lump sum payment in lieu of further benefit payments. This allegation must be closely examined to determine if, taking Galati's factual allegations as true, Galati has alleged a claim on which relief can be granted.

American Franklin contends that application of section 8371 to its conduct, even that conduct that occurred after July 1, 1990, would be a retrospective application of the law. It notes that, under Pennsylvania law, where a change in the law subsequent to the signing of a contract would effect a substantive change in the duties or potential liability of the parties, it is presumed that the legislature did not intend the new law to apply to existing contracts. *See Rudolph Rosa, Inc. v. Latrobe Brewing Co.,* 347 Pa.Super. 551, 562, 500 A.2d 1194, 1199–1200 (1985). By exposing American Franklin to substantial liability that was not within the contemplation of the parties at the time the contract was formed, American Franklin argues, section 8371 would alter the terms of the bargain between American Franklin and Galati. In the absence of explicit legislative direction to the contrary, according to American Franklin, section 8371 cannot be applied to any conduct arising under the purported contract between American Franklin and Galati, whether occurring before or after July 1, 1990.

Two members of this court have adopted the reasoning that American Franklin propounds. *See McAlister,* 1991 WL 102973, at *10, 1991 U.S.Dist. LEXIS 7945, at *38– 39; *Bryant,* 1990 WL 223126, at *5, 1990 U.S.Dist. LEXIS 17410, at *14–16; *cf. Chamberlain v. State Farm Mut. Auto. Ins. Co.,* No. 90–7070, 1991 WL 108688, at *3, 1991 U.S.Dist. LEXIS 8165, at *11 (E.D.Pa. June 13, 1991) (stating that "a real question exists as to whether the statute can be applied to any insurance contract executed prior to the July 1, 1990 effective date"). With all due respect, I cannot join them. Although section 8371 plainly has no force in the absence of an insurance policy, it "does not alter the insurance policy's substantive requirements, interfere with the insurer's contractual rights, or otherwise impair the parties' obligations." *Coyne v. Allstate Ins. Co.,* 771 F.Supp. 673, 675 (E.D.Pa.1991). Prior to July 1, 1990, no contractual provision permitted American Franklin to act in bad faith toward Galati; rather, American Franklin was obligated by law to administer the policy in good faith. Section 8371 did not alter this obligation. *See id.*

This situation differs from that faced by the Pennsylvania court on whose decision the *McAlister* and *Bryant* courts relied.

11. Galati argues that Cetola is vicariously liable for actions taken by American Franklin subsequent to the effective date of section 8371. Galati has cited no authority for the proposition that, under Pennsylvania law, an insurance agent may be held vicariously liable for the actions of an insurer. Even if Cetola acted in bad faith when he completed Galati's application, there is no rational basis for holding Cetola liable for the subsequent actions of American Franklin.

In *Rudolph Rosa,* the parties had entered into a beer distribution contract that allowed either party to terminate the contract immediately upon written notice. *See Rudolph Rosa,* 347 Pa.Super. at 557, 500 A.2d at 1197. Subsequent to the formation of the contract, a new statute took effect that prohibited the cancellation of liquor distribution contracts without 90 days' notice. *See id.,* 347 Pa.Super. at 556–57, 500 A.2d at 1196–97. The Superior Court of Pennsylvania determined that application of the statute to conduct under the pre-existing contract was retrospective, and therefore impermissible, precisely because the new statute varied the contractual rights and obligations of the parties under the contract. *See id.,* 347 Pa.Super. at 562–63, 500 A.2d at 1199–1200. In contrast, section 8371 does not abrogate a contractual right to act in bad faith. Because section 8371 does not alter the rights and obligations of the parties under insurance contracts in the manner described by the Superior Court in *Rudolph Rosa,* the application of section 8371 to insurers' conduct occurring after July 1, 1990, is not retrospective.

 Nevertheless, even if Galati is entitled to bring an action for conduct occurring after July 1, 1990, Galati's counterclaim fails to state a claim on which relief can be granted, because Galati has failed sufficiently to allege bad faith conduct on the part of American Franklin. As the Pennsylvania Supreme Court has stated, in jurisdictions that recognize a cause of action for bad faith conduct on the part of an insurer, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *D'Ambrosio,* 494 Pa. at 510, 431 A.2d at 971 (quoting *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 691, 271 N.W.2d 368, 376 (1978)).

In the present case, the pleadings demonstrate a reasonable basis for every action taken by American Franklin. According to the complaint, American Franklin reduced Galati's benefits in August 1990 from $4,000 per month to $2,900 per month after it learned that Galati's application for insurance had misstated his annual income and job duties. American Franklin further alleges that the $2,900 per month benefit paid to Galati after August 1990 represented the maximum benefit to which Galati was entitled given his annual income as stated in his tax returns and his job duties as stated in his application for benefits. *See* Complaint ¶ 39. Galati's only response to these allegations is to deny that he ever misrepresented his annual income or job duties. This denial is unavailing for the reasons given in Part III.3, *supra.* It is apparent from the pleadings that American Franklin had a reasonable basis for its decision to reduce Galati's benefits.

Subsequent to the reduction in benefits, American Franklin continued to investigate Galati's claim. During this time, American Franklin learned of Galati's extensive medical history, which had not been reported on Galati's application for insurance. Galati suggests no basis for finding that American Franklin acted in bad faith in investigating Galati's claim. The policy issued to Galati states, in section 8: "We rely on the statements you make in your application. We will not contest those statements after this policy has been in effect for 2 years during your lifetime. Any length of time you are disabled is excluded in computing this 2 year period." By this section, American Franklin reserved the right to contest the contents of Galati's application during the first two years that the policy was in effect. Furthermore, the application for insurance that Galati signed explicitly authorized physicians, insurers, employers, and consumer reporting agencies having relevant information concerning Galati to release such information to American Franklin for a period of two years from the date the application was signed. The application thus implicitly recognized American Franklin's right to investigate the information contained in the application. Galati's pleading suggests no basis for a finding that American Franklin conducted its investigation in bad faith.

Finally, Galati claims that the offer of a $15,000 lump sum payment in lieu of future

benefits, made two days before American Franklin instituted the present action, constituted bad faith. Once again, a reasonable basis for American Franklin's actions appears in the pleadings. By the time the offer was made, American Franklin possessed extensive information concerning Galati's medical history, information that Galati now acknowledges to be true. Under the circumstances, American Franklin would have been within its rights to initiate an action to rescind the policy immediately. The fact that it first offered Galati a settlement of $15,000 cannot give rise to a claim of bad faith.

## VI. Conclusion

For the reasons discussed above, Galati's motion to dismiss for lack of subject matter jurisdiction will be denied. American Franklin's motion for judgment on the pleadings will be granted on both American Franklin's claim and Galati's counterclaim. Finally, Galati's third-party claim against Cetola will be dismissed.